RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH AND RIVER BIRCH HOMEOWNERS ASSOCIATION, INC.

No. 291PA89

(Filed 7 February 1990)

**1. Municipal Corporations § 30.10 (NCI3d) — subdivision ordinance — conveyance of recreation area to homeowners' association**

A city has the authority under N.C.G.S. § 160A-372 to provide by ordinance for the conveyance of an open space recreation area to a homeowners' association in accordance with a subdivision plat previously approved by the city.

**Am Jur 2d, Dedication § 32; Zoning and Planning §§ 106, 123, 163.**

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

2. **Municipal Corporations § 30.10 (NCI3d) — subdivision ordinance — conveyance of common areas to homeowners' association**

   A city subdivision ordinance required the conveyance of common areas depicted on a preliminary plat to a homeowners' association where no amendment thereto had been approved and the project had been substantially developed in accordance with the preliminary plat.

   **Am Jur 2d, Dedication § 32; Zoning and Planning §§ 106, 123, 163.**

3. **Municipal Corporations § 30.10 (NCI3d) — subdivision project — common area on preliminary plat — refusal to permit development — proper exercise of police power**

   Where a city approved the application for a phased subdivision development on the condition that actual development would be in substantial conformance with the project as depicted on the preliminary plat, and the project was substantially developed in accordance with the preliminary plat, the city did not improperly exercise its police power by refusing to process an application to develop three acres originally depicted as a common recreation area on the preliminary plat even though the common area shown on the preliminary plat exceeds the minimum required by city ordinance.

   **Am Jur 2d, Dedication § 32; Zoning and Planning §§ 106, 123, 163.**

4. **Municipal Corporations § 30.10 (NCI3d) — subdivision ordinance — conveyance of open space to homeowners' association — no taking of property**

   A city subdivision ordinance providing for conveyance of open space to an association of homeowners living within the subdivision is reasonably related to the purpose of preserving urban open space, does not deprive the developer of the reasonable value and all practical use of the property, and thus does not constitute a taking of land. Art. I, § 19 of the N. C. Constitution; 14th Amendment to the U. S. Constitution.

   **Am Jur 2d, Dedication § 32; Zoning and Planning §§ 106, 123, 163.**

5. **Boundaries § 10.2 (NCI3d); Evidence § 32.7 (NCI3d) — subdivision covenants — meaning of "Common Areas" — latent ambiguity — parol evidence — preliminary and landscaping plats — statements by sales agents**

A description in a declaration of subdivision covenants of land to be conveyed to a homeowners' association as "Common Area" was latently ambiguous, and evidence of the preliminary plat and landscaping plan filed by the developer was admissible to identify the common area referred to in the declaration of covenants. Furthermore, evidence that sales agents used the preliminary and landscaping plats to illustrate the location of the common area was competent to show that those plats were documents intended by the parties to identify the boundaries and condition of the common area referred to in the covenants.

**Am Jur 2d, Boundaries §§ 8, 76, 95, 96.**

6. **Parties § 6 (NCI3d); Rules of Civil Procedure § 24 (NCI3d) — proper but not necessary parties — denial of motion to intervene**

The trial court did not err in denying the motion of individual homeowners to intervene in an action to determine whether a subdivision developer was required to convey to a homeowners' association a three-acre parcel designated as a common area on the preliminary plat since the individual homeowners were proper but not necessary parties, and the homeowners' association adequately represented their interest in the action. N.C.G.S. § 1A-1, Rule 14.

**Am Jur 2d, Boundaries §§ 8, 76, 95, 96.**

7. **Associations § 5 (NCI3d); Rules of Civil Procedure § 17 (NCI3d) — fraud and unfair trade practices — no standing by homeowners' association**

The trial court properly ruled that a homeowners' association did not have standing to prosecute on behalf of its members claims against a subdivision developer for fraud and unfair trade practices based on its failure to convey a common area to the association where it cannot be concluded that the damages claims are common to the entire membership of the association; it is unlikely that each association member shares the injury in equal degree; and permitting the association to pursue a

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

claim for damages for fraud would deprive its members of the right to seek the alternative remedy of rescission of contract.

**Am Jur 2d, Associations and Clubs §§ 54, 55.**

**8. Appeal and Error § 2 (NCI3d) — theory not raised in trial court**

A theory of recovery not raised in the trial court will not be considered on appeal.

**Am Jur 2d, Appeal and Error § 545.**

ON appeal by plaintiff and cross-appeal by defendant Homeowners Association of a judgment entered on 8 August 1988 by *Brewer, J.,* sitting without a jury, on the initiative of this Court made *ex mero motu* pursuant to N.C.G.S. § 7A-31(a) and Rule 15(e)(2) of the Rules of Appellate Procedure to hear the case prior to a determination by the Court of Appeals. Heard in the Supreme Court 10 October 1989.

*Michael B. Brough & Associates, by Michael B. Brough and Robert E. Hagemann, for plaintiff-appellant and cross-appellee.*

*City of Raleigh, by Thomas A. McCormick, Jr., City Attorney, for defendant-appellee City.*

*Hatch, Little & Bunn, by David H. Permar and Josephine L. Holland, for defendant-appellee and cross-appellant Homeowners Association.*

MEYER, Justice.

At issue is a parcel of land of 3.0 acres, more or less, which plaintiff seeks to develop with town homes. Defendants claim this property has been set aside by the plaintiff as a recreation area for the benefit of the members of the River Birch Homeowners Association (hereinafter Homeowners Association). In its final judgment, the trial court found that the Raleigh City Code required the conveyance of the disputed property to the Homeowners Association and that such a requirement was not beyond the authority of the City. The court held further that there was no oral contract between the developer, River Birch Associates (hereinafter River Birch),[1] and the Homeowners Association to convey or landscape

---

1. The home owners refer to their association in various documents as "River Birch" or "Riverbirch" Homeowners Association, but to their subdivision as

the property in question. The court ordered the conveyance of the parcel to the Homeowners Association.

We confirm that the City has the authority to provide by ordinance for the conveyance of an open space recreation area to a home owners' association in accordance with the plat of a subdivision previously approved by the City. Additionally, we confirm that the City is not required to process the project plan for the development of the last remaining area of the subdivision until it is presented in compliance with the approved preliminary plat. We affirm the trial court's decision that River Birch must convey the three-acre parcel in dispute to the Homeowners Association as per the approved preliminary plat. However, we reverse the trial court's ruling that parol evidence was inadmissible to identify the boundaries and condition of the common area to be conveyed.

In August 1980 River Birch filed an application with the City of Raleigh for subdivision and site plan approval for a 144-unit town home project on 19.6 acres to be known as Riverbirch Township.[2] Among the documents submitted were a preliminary site plan and a landscaping plan. These documents depicted the three-acre parcel which is the subject of this dispute as common area appropriately landscaped. At no time did River Birch record these documents with the Wake County Register of Deeds. In October 1980 the Raleigh City Council approved the Riverbirch Township site plan.

Following approval of the Riverbirch Township site plan, River Birch developed and sold town homes within this project on a section-by-section basis. River Birch developed seven sections in this manner, with the three-acre parcel representing the eighth and final section. Before sales began in each section, River Birch obtained final plat approval of one or more plats from the City of Raleigh and recorded these plats with the Wake County Register of Deeds. None of the recorded final plats contain any portion of the three-acre parcel which to this date remains undeveloped.

"Riverbirch." Most documents filed with the City refer to the subdivision as "Riverbirch." The developer refers to itself as "River Birch." For the sake of clarity, we refer to the subdivision as "Riverbirch" and to the parties as "River Birch."

2. The land subdivision called Riverbirch Township is not to be confused with the county political unit known as a "township." See N.C.G.S. § 153A-19 (1987). River Birch Associates designated the name of the development and labeled the preliminary plat filed with the City as "Riverbirch Township."

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

Contemporaneously with the development of section one of Riverbirch Township, River Birch prepared, executed and recorded a "Declaration of Covenants, Conditions and Restrictions for the River Birch Subdivision." As River Birch developed subsequent sections of Riverbirch Township, it prepared and recorded amendments to the covenants. The covenants specifically state that common area is to be held by the Homeowners Association for the common use and enjoyment of the 'subdivision home owners. They do not refer specifically to the three-acre parcel.

Riverbirch Township is located on property which the Raleigh City Council has zoned R-10 (ten residential units per acre maximum). A city ordinance requires town home developments in an R-10 zone to include a minimum of ten percent open space. Each of the seven recorded sections of Riverbirch Township, alone and in combination with previously recorded sections of Riverbirch Township, met common open space and density requirements of the Raleigh city subdivision and site plan ordinances.[3] River Birch has conveyed the common area of each of the seven recorded sections to the Homeowners Association. The three-acre parcel in dispute is not necessary to meet city common area and density requirements for the 16.6 acres already developed.

Until December 1985, River Birch developed the project in a manner consistent with the preliminary site plan it had filed with the City. At that time River Birch filed a new site plan depicting twenty-nine town homes (later adjusted to twenty-four homes) on the three-acre parcel in dispute. In its application for site plan approval submitted to the City of Raleigh on 2 September 1986, River Birch proposed to name this new development "Marsh Creek Townes." The development depicted on the Marsh Creek Townes proposal did not conform to the open recreation area depicted in the original Riverbirch Township site plan. Viewed in isolation, this preliminary plat also met the minimum requirements of the Raleigh subdivision ordinance. However, because the three-acre parcel was set aside as common recreation area for the Riverbirch Township subdivision in the plan approved by the City, the City Council on 16 September 1986 refused to process the application

---

3. These are located in chapter 3, Subdivisions and Site Plans, of section 10, Planning and Development, of the Raleigh City Code. Unless otherwise noted, all ordinance references are to the 1989 edition of the Raleigh City Code. We will cite to the Code in the following manner: "Section XX-XXXX."

any further and instead requested River Birch to convey the three-acre parcel to the Homeowners Association.

River Birch filed suit against the City of Raleigh claiming: Section 10-3073 of the subdivision and site plan ordinance exceeds the statutory authority of the City, the refusal of the City to process the Marsh Creek Townes application denied River Birch all use of its property, and thus its action constituted a taking. River Birch sought declaratory and injunctive relief as well as monetary damages. The City of Raleigh responded with a motion to dismiss for failure to join a necessary party—the Homeowners Association. The Homeowners Association and several Riverbirch Township home owners acting in their individual capacities filed motions to intervene in order to defend the primary action and to enter a counterclaim. Presiding Superior Court Judge Barnette in a preliminary hearing allowed the intervention motion of the Homeowners Association (which River Birch did not oppose) but denied the motion of the individual home owners.

In its counterclaim, the Homeowners Association alleges: Section 10-3073 obligates River Birch to transfer the three-acre parcel to the Homeowners Association; River Birch has breached contractual obligations to the property owners; River Birch's acts constitute fraud; and the acts of River Birch were unfair and deceptive practices in violation of N.C.G.S. § 75-1.1. Upon motion by River Birch, Superior Court Judge Battle, in a subsequent preliminary hearing, dismissed the fraud and unfair and deceptive trade practices claims on the pleadings. He denied the motion to dismiss the contract claim, indicating orally that judgment on the pleadings was not appropriate because the statute of frauds is an affirmative defense.

On 1 August 1988 the case came on for trial without a jury before Superior Court Judge Brewer. At that time Judge Brewer, pursuant to a motion in limine by River Birch, ruled that he would exclude evidence that sales agents of River Birch referred to copies of the preliminary plat and landscaping plan, contained in brochures and hanging on the model unit walls, to indicate that the three-acre parcel at issue would be conveyed to the Homeowners Association or that the parcel would be developed as open space. Judge Brewer based his decision on the parol evidence rule, declaring that such evidence would contradict or add to the unambiguous term "Common Area" as defined in the written contracts of sale, and that

**RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH**

[326 N.C. 100 (1990)]

if offered to establish a contract separate and apart from the written sales contracts, such evidence would fail to satisfy the writing requirement of the statute of frauds. Following the presentation of evidence, Judge Brewer held that section 10-3073 is a valid exercise of statutory authority which worked no taking against plaintiff River Birch and which in fact required the plaintiff to convey to the Homeowners Association the three-acre parcel as shown on the approved preliminary plat.

Subsequent to oral argument in this Court, the Homeowners Association moved for an order restraining River Birch from disposing of certain remaining town house units. We denied this motion on 28 December 1989.

I.

[1] Plaintiff asserts that the Raleigh city subdivision and site plan ordinance section 10-3073(b)(2) exceeds the statutory authority of cities to regulate subdivisions. In particular, plaintiff objects to the ordinance's provision that developers of subdivisions convey fee simple title of common areas to the subdivision home owners' association. We hold that the ordinance requiring a conveyance in accordance with the approved plat does not exceed the statutory authority of the City.

Section 10-3073(b)(2) states in part that "[a]ll areas which are shown on the site plan other than public streets and residential sites, shall be shown and designated as common areas, the fee-simple title to which shall be conveyed by the developer to the homeowners' association."[4] The statutes granting cities authority to regulate subdivision development are N.C.G.S. §§ 160A-371 to -376. More particularly, N.C.G.S. § 160A-372 provides, "A subdivision control ordinance may provide . . . for the dedication or reservation of recreation areas serving residents of the immediate neighborhood within the subdivision." The plain words of the statute make it abundantly clear that the legislative intent is to somehow secure to the residents of the "immediate neighborhood within the subdivision" the benefit of particular recreation areas.

The legislature has specifically provided that the powers granted to municipalities in chapter 160A "shall be broadly construed and

---

4. The current ordinance is virtually identical to the ordinance as it read in October 1980 (an amendment added the words "which are shown").

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect." N.C.G.S. § 160A-4 (1987). *See Grace Baptist Church v. City of Oxford,* 320 N.C. 439, 443, 358 S.E.2d 372, 374 (1987); *Smith v. Keator,* 285 N.C. 530, 534, 206 S.E.2d 203, 205-06, *appeal dismissed,* 419 U.S. 1043, 42 L. Ed. 2d 636 (1974); *Town of West Jefferson v. Edwards,* 74 N.C. App. 377, 385, 329 S.E.2d 407, 412-13 (1985); *City of Durham v. Herndon,* 61 N.C. App. 275, 278, 300 S.E.2d 460, 462 (1983). Thus, the subject of inquiry is the scope of the enabling legislation on which Raleigh relies in enacting its ordinance.

Plaintiff argues that the conveyance to the subdivision Homeowners Association provided for by the city ordinance in question is neither a "dedication" nor a "reservation." It is true that the city ordinance in question does not provide for a "dedication" of common recreation areas within the technical sense of the word. A conveyance creates a "dedication" only when the conveyance benefits the public at large and not merely a portion of it, such as the property owners within a particular subdivision. *Realty Co. v. Hobbs,* 261 N.C. 414, 421, 135 S.E.2d 30, 36 (1964). "[T]here is no such thing as a dedication between owner and individuals. The public must be a party to every dedication. In fact the essence of a dedication to public uses is that it shall be for the use of the public at large." *Jackson v. Gastonia,* 246 N.C. 404, 409, 98 S.E.2d 444, 447 (1957) (quoting authorities). The ordinance in this case states unequivocally that the conveyance of common areas shall be in fee simple to the home owners' association, which is composed of the property owners of the subdivision. Neither does the ordinance contemplate a "reservation" in the technical sense.

"[A] reservation is a clause in a deed whereby the grantor reserves something arising out of the thing granted not then in esse, or some new thing created or reserved, issuing or coming out of the thing granted and not a part of the thing itself . . . ." *Trust Co. v. Wyatt,* 189 N.C. 107, 109, 126 S.E. 93, 94 (1925). The creation of a reservation, then, technically contemplates some instrument by which there is a withholding of an interest for the benefit of the grantor.

Drafters often use terms such as "dedication" and "reservation" without regard to their technical meaning. *Reynolds v. Sand Co.,* 263 N.C. 609, 613, 139 S.E.2d 888, 891 (1965) (citing numerous

instances). When the clear purpose of a statute would be subverted by a mechanical application of a technical term, the courts will interpret that term to ensure that the legislative purpose achieves its full effect. *Duggins v. Board of Examiners*, 294 N.C. 120, 126, 240 S.E.2d 406, 411 (1978) (the proper course in interpreting an ambiguous statute is to adopt that sense of the words which promotes the object of the statute in the fullest manner); *Ikerd v. R.R.*, 209 N.C. 270, 272, 183 S.E. 402, 403 (1936) (where terms are ambiguous, court may control the language to give effect to the real intention of lawmakers); *Fortune v. Commissioners*, 140 N.C. 322, 327, 52 S.E. 950, 951 (1905) (where language used admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and effectuate its object).

Inherent in a "dedication" is the fact that a conveyance occurs. By the same token, a conveyance is a necessary feature of any "reservation." Thus, a common denominator throughout the enabling statute is that cities are authorized to require conveyances. The purpose of the statute is to provide for recreation areas for the benefit of residents within the immediate neighborhood of the subdivision. Giving maximum effect to the terms and the purpose of the statute with the least amount of judicial interpretation, we find that N.C.G.S. § 160A-372 contemplates that a city ordinance may provide for the conveyancing of property so long as the conveyance promotes the establishment of recreation areas for the benefit of residents within the immediate neighborhood of the subdivision. We find further support for this interpretation of the legislative grant of power from the legislative mandate that we are to construe in a broad fashion the provisions and grants of power contained in chapter 160A. N.C.G.S. § 160A-4 (1987).[5] We conclude that the requirement of a conveyance of the common recreation areas to the home owners' association of a subdivision is an "additional and supplementary" power "reasonably necessary or expedient" to carry into effect the legislative intent to secure to the residents of the subdivision the benefits of the recreation areas.

---

5. Provisions in chapter 160A (including those in N.C.G.S. § 160A-372) "*shall* be broadly construed and grants of power *shall* be construed to include any additional and supplementary powers that are reasonably necessary." N.C.G.S. § 160A-4 (1987) (emphasis added). The legislature adopted this provision in 1971 in the same session law that established N.C.G.S. § 160A-372. 1971 N.C. Sess. Laws ch. 698. Thus, there can be no doubt that the broad interpretation mandated by N.C.G.S. § 160A-4 is to apply to N.C.G.S. § 160A-372.

**RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH**

[326 N.C. 100 (1990)]

River Birch concedes that an application of the technical meaning of the term is not appropriate. River Birch urges us to adopt a narrow generic meaning that would require the developer to "withhold" an area from development without requiring conveyance of that area. Although the interpretation proposed by River Birch may be appropriate in the reservation of school sites as provided for in the statute under review, N.C.G.S. § 160A-372 (1987), a question we need not decide, such an interpretation would create severe problems regarding the continued maintenance of subdivision open space in future years.

The ordinance provision that a developer convey open space to a home owners' association represents a municipal effort to control the very real problem of "nuisance lots" that may otherwise result. The fundamental problem is one of providing for the continued maintenance of urban open space. It is true that the City could have opted to require a dedication of the recreation areas subject to a provision that the City would assume no responsibility for maintenance until the City deemed it was in the public interest. *See Emanuelson v. Gibbs*, 49 N.C. App. 417, 271 S.E.2d 557 (1980). But this approach does not address the municipality's core problem of providing for the future maintenance of the urban open space. While the City may always require maintenance by ordinance using nuisance abatement authority under N.C.G.S. § 160A-193, for example, such authority is empty where the developer has sold all developed property and gone out of business or otherwise has no assets. Real estate development corporations are often project-specific; upon the completion of the project, the developer will frequently liquidate the corporation. In the event that the home owners' association should dissolve, the City will receive the space through dedication. Section 10-3071(b)(8)(b)(5).

Additionally, by providing for a conveyance to the home owners' association, the City takes advantage of the fact that those with an immediate interest in a common area have the duty to provide for its maintenance. Thus, section 10-3073(b)(2) is a limited, practical attempt to provide for open recreation space without creating burdens on the municipal purse or inadvertently creating an abundance of nuisance areas.

We note the line of cases holding that because the zoning and subdivision regulations are in derogation of private property, such provisions should be liberally construed in favor of the owner.

See, e.g., *Heaton v. City of Charlotte*, 277 N.C. 506, 522, 178 S.E.2d 352, 362 (1971). However, these cases have a limited applicability where the question, as here, is not whether the owner's land may be restricted, but what tools are available to a municipality to ensure and protect that restriction.

The foregoing analysis of N.C.G.S. § 160A-372 indicates that the legislature contemplated that city ordinances provide for the conveyancing of subdivision recreation areas. We hold that N.C.G.S. § 160A-372 permits city ordinances to provide for the conveyance of recreation areas in accordance with approved plats to home owners' associations, in order to set aside to the residents of a subdivision certain areas for recreation purposes. The trial court was correct when it held that Raleigh city ordinance section 10-3073(b)(2) does not exceed the statutory authority of the City.

II.

[2] Under the peculiar facts of this case, we hold that Raleigh city ordinance section 10-3073(b)(2) provides for the conveyance of common areas to home owners' associations where conveyance of the common areas as depicted on approved preliminary plats is all that remains to complete the approved project.

River Birch contends that the unrecorded, preliminary site and landscaping plans which depict the three-acre common area should not bind it as to the common areas to be conveyed. The procedural context in which the ordinance rests is relevant to our inquiry into proper interpretation of the ordinance. Like many subdivision ordinances, the Raleigh city subdivision ordinance contemplates a two-step administrative process — preliminary and final plat approval. For a general discussion, see 5 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 66.02 (1989). The appellation "preliminary" is a beguiling one, for the preliminary plat is hardly a rough introductory document. Unlike a sketch plan, which is used as a vehicle for informal discussion between developers and city planners, the preliminary plan is a formal document that constitutes the most critical step in the subdivision approval process. A developer submits a preliminary plat with the application for subdivision approval. This gives the applicant and the city the opportunity to ascertain whether the proposed project complies with the applicable subdivision standards. Under the Raleigh ordinance, the departments of planning, public utilities, public works, and engineering, as well as the city manager, review the plan

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

for compliance with standards and effect on delivery of services. Section 10-3012(b). The City may note where changes are necessary, and the developer may take the necessary changes into account without significant expense. Following departmental review. and comment, the plat must receive unanimous planning commission approval or, if that is not given, approval from the City Council. Section 10-3012(c). Approval by the City constitutes approval of the *proposed* project and gives the applicant the authority to construct all improvements indicated. Once the applicant makes substantial expenditures in good-faith reliance on the approval, he has a vested right to carry out the project as approved. *See Town of Hillsborough v. Smith*, 276 N.C. 48, 170 S.E.2d 904 (1969). Such approval also indicates that if the project is completed substantially as proposed, the completed project will receive final approval.

By the time the developer seeks final plat approval, he has constructed the improvements depicted on the final plat. Once the developer has constructed all streets and utilities in "substantial conformity" with the preliminary plat, section 10-3012(d), and these have been inspected by the city, and after all deeds of dedication and easement are completed, the approval of the final plat is automatic. Section 10-3012(f).

> Final approval under the two-step procedure amounts to endorsement of the final form of the plat to be filed in the county recording office after board investigation and determination that the terms and conditions of tentative approval have been met and that required improvements . . . have been installed or provided for.

*Levin v. Township of Livingston*, 35 N.J. 500, 512, 173 A.2d 391, 398 (1961). Final plat approval is, essentially, a ministerial check and statement, *Southern Co-op Dev. Fund v. Driggers*, 696 F.2d 1347, 1352 (11th Cir.), *cert. denied*, 463 U.S. 1208, 77 L. Ed. 2d 1389 (1983); *Bienz v. City of Dayton*, 29 Or. App. 761, 767, 566 P.2d 904, 913 (1977), made by the city affirming that what the developer has done is in conformity with city standards. Where development of a subdivision is in multiple stages, the developer need seek approval for only that phase of the development that is complete.

Final approval is a prerequisite to the recording of the plat, and recording is a prerequisite to the sale of lots in reference to a subdivision plat. N.C.G.S. § 160A-375 (1987). Recording of the

plat still is not sufficient to create an interest in the common areas for the benefit of subdivision home owners. There must be purchasers of lots subject to deeds that reference the final recorded plat. *Realty Co. v. Hobbs*, 261 N.C. at 421, 135 S.E.2d at 35-36; *Janicki v. Lorek*, 255 N.C. 53, 59-61, 120 S.E.2d 413, 418-19 (1961).

This two-step process recognizes the fact that "[u]ntil a plat of a proposed subdivision is properly recorded, there is no assurance that the subdivision will ever be established. The act of recording brings the subdivision into being and makes of it a reality." *Metropolitan Plan Commission of Marion County v. Indiana*, 243 Ind. 46, 50, 182 N.E.2d 786, 788 (1962). Prior to recording, the use and purpose of the subdivision or the plat could have been abandoned altogether. Thus, it is conceivable that property owners may never acquire rights in some common areas shown on the preliminary site plan and may acquire rights in other areas that were not shown as common areas on the preliminary site plan but that are shown as common areas on the final plat.

In the context of a phased development (as was the development of Riverbirch Township), the policy of the City of Raleigh has been to require each phase of such a development to stand on its own. Section 10-3073(b)(4)(b) (by unwritten policy prior to 1985). Under this policy, each subdivision phase alone must meet all ordinance requirements, thereby ensuring the public's health, safety and welfare should the developer fail to complete the entire development as depicted on the preliminary plat.

In the case before us, River Birch had substantially completed all construction depicted on the approved preliminary plat. There was no need for River Birch to seek any further final plat approval, for all residential units contemplated in the preliminary plan had been constructed and had been made the subject of approved and recorded final plats. There was no need to file a final plat for the last remaining section, the common area, as that area was not subject to further development other than landscaping. Thus, it was entirely appropriate for the trial court to require the conveyance of the remaining three-acre parcel as depicted on the preliminary plat.

The defendant City urges us to hold that the preliminary site plan is a document of public record that, although not recorded, does create implied rights and obligations as to the developer, the City, and individual home owners. While implied rights and

obligations may arise in certain fact-specific circumstances, we cannot go as far as the City urges and hold that section 10-3073(b)(2) requires the conveyancing of common areas as depicted on preliminary site plans at the time they are filed. To do so would produce peculiar results.

One of the purposes of the preliminary plat approval process is to give a developer an indication that the proposal is legally feasible. Frequently, prior to applying for preliminary plat approval, developers will purchase an option on the subject land parcel rather than obtaining fee simple title in the property. The purpose of the option is to reduce the developers' risk should the city with jurisdiction deny approval. *See Finch v. City of Durham*, 325 N.C. 352, 367, 384 S.E.2d 8, 17, *reh'g denied*, 325 N.C. 714, 388 S.E.2d 452 (1989) (one purpose of an option contract is to minimize investment exposure by postponing the decision to accept or reject an offer). This was precisely the procedure followed in this instance by River Birch, which did not acquire fee simple title to the properties subsequently developed until some fifteen months after the City of Raleigh approved the preliminary plat.[6] If River Birch had instead chosen not to exercise its option, it would follow from a holding that the city ordinance requires the conveyance of property as per preliminary plats that the City would have the power to force River Birch to purchase and convey the common areas depicted even if River Birch elected not to exercise its option.

The interpretation urged by the City would also affect developers of multi-phase projects that abandon the project prior to substantial completion but subsequent to finishing one or more phases of the project. Under the City's interpretation of the ordinance, such a developer would be required to convey to the home owners' association the property depicted as common area in the undeveloped phases of the project.

Here, however, the proposed development had been substantially developed in compliance with the preliminary plan. There was nothing left to develop except the open space. We hold that the trial court was correct when it stated that section 10-3073(b)(2) of the Raleigh city subdivision and zoning ordinance required the

---

6. That River Birch had standing to submit the preliminary plat prior to obtaining fee simple title is not in dispute. *See, e.g., Lakeshore Dev. Corp. v. Plan Comm. of Village of Oconomowoc Lake*, 12 Wis. 2d 560, 569-70, 107 N.W.2d 590, 595 (1961).

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

conveyance of common areas as depicted on a preliminary plat so long as no amendments thereto had been approved and the project had been substantially developed in accordance with the preliminary plat.

III.

[3]  Nor must the City process River Birch's application to develop the three acres originally depicted as common area in the preliminary plat. River Birch insists that the refusal by the City of Raleigh to process River Birch's application for development of the Marsh Creek Townes project constitutes an improper exercise of the City's police power for private purposes. More specifically, River Birch asserts the City's refusal is a violation of due process under article I, section 19 of the North Carolina Constitution (the law of the land clause) and of the fourteenth amendment of the United States Constitution. We reject these contentions. Rather, we hold that where a developer submits a project plan for approval and undertakes the development of the property according to the approved preliminary plan, a city may refuse to consider a subsequent stage of the overall project that fails to take into account the prior development as proposed and undertaken in the prior stages of development.

We note as a preliminary matter that the rights at issue here are those of the City. These rights are separate and distinct from those asserted by the Homeowners Association.

That the police power of a City must be exercised for public rather than private purposes is a well-established principle of this State, *State v. Ballance*, 229 N.C. 764, 769-70, 51 S.E.2d 731, 734-35 (1949); *State v. Ray*, 131 N.C. 814, 42 S.E. 960 (1902), and of the federal Constitution, *Keystone Bituminous Coal v. Benedictus*, 480 U.S. 470, 485, 94 L. Ed. 2d 472, 488 (1987); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 67 L. Ed. 322 (1922). River Birch argues that the City is exercising its police power to further the narrow private interests of the Homeowners Association members. According to River Birch, the refusal by the City to process the Marsh Creek Townes application is in fact a political response to the claim of the Homeowners Association that the three-acre parcel should be conveyed to the Homeowners Association as open recreation space. River Birch argues that because the Marsh Creek Townes project meets the density and open space requirements of the City, the City must give its preliminary approval to the scheme. *See,*

*e.g., Woodhouse v. Board of Commissioners*, 299 N.C. 211, 218, 261 S.E.2d 882, 887 (1980) ("The board is 'without power to deny a permit on grounds not expressly stated in the ordinance' "); *Application of Rea Construction Company*, 272 N.C. 715, 718, 158 S.E.2d 887, 889-90 (1968) ("Where the applicant meets all the requirements of the ordinance he is entitled to the issuance of a permit as a matter of right and it may not lawfully be withheld"). Nevertheless, in this case we find no abuse of police power for the benefit of a narrow private class.

Cities may regulate open space as part of their power to provide for the physical, social, aesthetic and economic welfare of the community. *Agins v. Tiburon*, 447 U.S. 255, 261, 65 L. Ed. 2d 106, 112 (1980). *See also* N.C.G.S. §§ 160A-351, -402 (1987). Once a developer shows the project meets the minimum standards for development, " 'the burden of establishing that such use would violate the health, safety and welfare of the community falls upon those who oppose the issuance' " of the development permit. *Woodhouse v. Board of Commissioners*, 299 N.C. at 219, 261 S.E.2d at 888 (quoting *West Whiteland Township v. Exton Materials Inc.*, 11 Pa. Cmwlth. 474, 479, 314 A.2d 43, 46 (1974) ). In *Woodhouse*, the developers sought approval for a preliminary plan to construct a planned unit development in Nags Head. We held that the Nags Head Board of Commissioners improperly denied the application where the developer had met the local minimum requirements for a planned unit development and where there was no contrary showing that the project would otherwise impermissibly compromise the health, safety or welfare of the community. In that case there had been no construction undertaken subject to a prior approved preliminary plan. In the case before us, although it is true that the Marsh Creek Townes project standing alone would meet the minimum ordinance requirements, the project fails the approval process because it differs significantly from the prior preliminary plan as approved and undertaken by the developer.

River Birch admits that the City must use its authority to ensure compliance with its established standards. One such standard is that a final approved plat shall comply substantially with the prior approved plat. The version of this ordinance in effect on 7 October 1980, the date River Birch received approval for its preliminary plat application, stated that "[t]he engineering plat(s) will be checked against the requirements and conditions of preliminary approval before . . . signing of the plat to be recorded

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

by the city clerk." Section 10-3012(d) (1979).[7] Raleigh city planners consistently have adopted the view that the final plat should reflect generally the same configuration and acreage as was shown in the preliminary site plan. In an unrelated action taken subsequent to the approval of the Riverbirch Township preliminary plat, the City amended section 10-3012(d) on 14 November 1980 to state in part: "Developments approved under [the subdivision standards] of this chapter shall show sections or phases on the approved preliminary plat and *all subsequent plats shall be in substantial conformity therewith.*" (Emphasis added.) This amendment, continuing in force today, is an explicit statement of prior unwritten policy. "[T]he construction adopted by those who execute and administer the law in question is relevant and may be considered." *MacPherson v. City of Asheville*, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973). By referencing the construction given section 10-3012(d) by city planners and the subsequent history of legislation of the ordinance, we interpret section 10-3012(d) as in effect in 1979 to have required that subsequent plats, namely the engineering and final plats, be in substantial conformity with the approved preliminary plat. A project application contemplating construction on a parcel of land depicted as open space in a prior plan subsequently undertaken cannot result in a final plat "in substantial conformity" with the initial approved preliminary plan. Thus, the City's refusal to process the Marsh Creek Townes proposal is not an abuse of police power; rather, this refusal is the result of enforcement of established standards.

Even if section 10-3012(d) as in effect in 1979 did not require substantial conformity between the preliminary plat and subsequent plats, River Birch would be bound by the preliminary plat which it submitted and undertook. Section 10-3013(b)(5) requires preliminary plats to show, among other information, the "[b]oundary line of the proposed development, the lot lines, parcels of land to be dedicated to public use, setback lines, easements, street right-of-way lines, and other property lines, drawn to scale and with tentative dimensions." Subpart (b)(6)(i) of the same ordinance requires the preliminary plat to show the "[t]otal acres" of the

---

7. The engineering plat is a detailed survey plat showing the exact proposed location of all monuments, utilities, streets, etc. Section 10-3014(b). It is temporally intermediate to the preliminary and final plats in the filing process. The final plat is the same as the engineering plat "only corrected in cases where minor variations were necessary upon actual installation of facilities." Section 10-3015.

proposed project. One purpose of these requirements is to aid the City in area planning based upon the information included in the preliminary plan. The preliminary plan River Birch submitted included the required information. River Birch depicted on the preliminary plan the disputed three-acre parcel within the boundary of the development. The landscaping plan submitted by River Birch as part of its application depicted the three-acre parcel within the development boundary. No lot lines indicated the parcel was to be subdivided in either document. Instead, the parcel was an undifferentiated part of a larger area clearly labeled "common area" on both the site plan and the landscaping plan. River Birch indicated that the total acreage of the Riverbirch Township project was "19.6 acres," not the 16.6 acres that would result if the City were to approve the Marsh Creek Townes project. The request River Birch submitted to the Raleigh Planning Commission was for construction of "144 Townhouse units on 19.6 acres." The Planning Commission recommended "that this request be approved *according to a map entitled, 'Riverbirch Township,'*" which was the preliminary map River Birch submitted. (Emphasis added.) The City Council approved the request to "construct 144 Townhouse units on 19.6 acres" "*according to a map entitled, 'Riverbirch Township'*" and subject to a further condition not relevant here. (Emphasis added.) Thus, a condition of approval was that development of the subdivision was to be in accordance with the site plan that River Birch submitted.

"It is well settled that conditions may be imposed by a municipal planning commission in connection with the approval of a proposed subdivision map or plan." 3 Yokley, *Zoning Law and Practice* § 17-8 at 71 (4th ed. 1979) (citing cases). However, any such condition imposed must be authorized by statute. *Id.* § 17-9 at 79. That Raleigh authorities could condition approval on development in substantial conformity with a preliminary plat as approved is without doubt.

This situation is analogous to that of *Convent v. Winston-Salem*, 243 N.C. 316, 90 S.E.2d 879 (1956). In that case the Sisters of St. Joseph secured a special use permit to convert a home to a school in a residential zoning district. The permit included a condition requiring city approval for any subsequent structural changes made to the exterior of existing buildings. When the Sisters subsequently sought to make such changes, the city denied the Sisters a building permit, even though the proposed changes other-

## RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

wise fully complied with zoning ordinance provisions on yard, area and height restrictions. We held that acceptance of benefits under the special use ordinance prevented an attack upon it.[8]

Here, as in *Convent v. Winston-Salem*, River Birch took advantage of benefits that accrued as a result of voluntarily depicting common area in its preliminary plat. Upon approval of its plan, River Birch received and exercised the right to cluster the development and effectively increase the housing density to greater than otherwise allowed under the zoning ordinance. Raleigh explicitly ties this right to subdivision approval. Section 10-3071(b). That River Birch depicted more than the minimum common area necessary is of no great import. *Cf. Doughtie v. Dennison*, 240 Ga. 299, 240 S.E.2d 89 (1977) (although twenty-five-foot strips sufficient for recreation easement, developer could not unilaterally alter terms of restrictive covenant setting aside larger area for same purpose). River Birch cannot now attack a condition of its own making which the City has accepted.

We do not suggest that River Birch was required to develop the Riverbirch Township project once it submitted its project proposal. But having substantially undertaken the development according to the approved preliminary plan, River Birch indicated its assent to the condition that development be according to the approved preliminary plan. Failure to meet a condition of approval is grounds for revocation of preliminary plat approval. *Parker v. Bd. of County Comm'rs of Dona Ana County*, 93 N.M. 641, 603 P.2d 1098 (1979). "When a subdivision plan has been approved upon conditions, the failure to comply with the conditions will result in the rescission of the approval." *Foley v. Hamilton*, 603 S.W.2d 151, 153 (Tenn. App. 1980) (citing *Patelle v. Planning Bd. of Woburn*, 6 Mass. App. 951, 383 N.E.2d 94 (1978) ). We see no reason why failure to meet a condition also should not be grounds for denial of approval of a preliminary plat of a subsequent stage of development where the project submitted would make compliance with

---

8. While acceptance of a special use permit may preclude a challenge to its validity, there is no preclusion of a challenge to interpretation of that permit. *Davidson County v. City of High Point*, 321 N.C. 252, 259, 362 S.E.2d 553, 558 (1987). River Birch does not challenge the City's interpretation of its condition. Instead, River Birch denies the existence of the condition altogether. However, were River Birch to make such a challenge, the evidence supports the conclusion that the three-acre remaining area is an undifferentiated part of the larger common area depicted on the preliminary plat and landscaping plans.

a prior condition impossible. To say that Riverbirch Township meets the minimum requirements of the city open space ordinance without the three-acre area is not enough where a condition of preliminary approval is that development will proceed substantially according to the plan submitted.

Nor does our holding prohibit a city from granting a variance to its prior condition upon proper submission of an otherwise compliant application. *See Bienz v. City of Dayton*, 29 Or. App. 761, 769, 566 P.2d 904, 914. However, where a condition of city approval is one proposed and accepted by the developer, the city is not obligated to grant a variance to the developer's self-created and subsequently undertaken condition, even if hardship results. *See Cryderman v. City of Birmingham*, 171 Mich. App. 15, 21-22, 429 N.W.2d 625, 627 (1988).

River Birch has received all the rights which it sought in the subdivision development it proposed. There is no basis to its claim that the City's refusal to approve the plat for Marsh Creek Townes was a denial of due process. Rather, it was exactly because there was due process that the Homeowners Association was able to bring this matter to the attention of the Raleigh City Council. Thus, we hold that the City of Raleigh properly exercised its police power when it refused to process the Marsh Creek Townes project which River Birch submitted.

IV.

[4] In its final assignment of error, River Birch urges us to hold that the ordinance's provision that the developer convey the disputed common area to the Homeowners Association constitutes a taking of land. We decline to do so.

The fifth amendment of the United States Constitution, through the fourteenth amendment, and the law of the land clause of our state Constitution, article I, section 19, require just compensation for all takings of private property for public use. *Keystone Bituminous Coal Assoc. v. DeBenedictus*, 480 U.S. 470, 481 n.10, 94 L. Ed. 2d 472, 486 n.10; *Long v. City of Charlotte*, 306 N.C. 187, 196, 293 S.E.2d 101, 107-08 (1982). The two-part test to determine whether a taking has occurred under the federal Constitution is similar to that used to determine whether a taking has occurred under the state Constitution. We first determine whether the action at issue is a valid exercise of police power by which the ends

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

sought are related to the means used. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 836-37, 97 L. Ed. 2d 677, 689 (1987) (there must be a "nexus" between imposed condition and otherwise legitimate end advanced as justification); *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 261, 302 S.E.2d 204, 208 (1983) (means chosen must be reasonable and ends sought must be within scope of police power). If there is a rational relation between the ends sought and the means taken, we then determine whether the property has "a practical use and a reasonable value." *Finch v. City of Durham*, 325 N.C. at 364, 384 S.E.2d at 15.

The objective of preserving open space is within the scope of a municipality's police power. *Agins v. Tiburon*, 447 U.S. at 260, 65 L. Ed. 2d at 112. Like the ordinance in *Agins*, the ordinance here is part of a comprehensive plan of development that applies uniformly to all property owners and from which all property owners, including developers, will benefit. As we have noted in the previous section, the General Assembly has recognized the importance of preserving open space and has given broad authority to municipalities to take action to conserve open space. *See, e.g.*, N.C.G.S. §§ 160A-402, -372 (1987). One aspect of preserving open space involves providing for its future maintenance. Raleigh ordinance § 10-3073(b)(2) is a reasonable means to provide for the preservation of open space. We thus conclude that "a nexus exists between those goals and the . . . ordinance itself," *Finch v. City of Durham*, 325 N.C. at 367, 384 S.E.2d at 17, and hold that a city ordinance providing for conveyance of open space to an association of home owners living within the subdivision is reasonably related to the purpose of preserving urban open space.

River Birch nonetheless argues that the city ordinance denies the developer the right to develop its three-acre parcel. Thus, River Birch asserts, the City has denied it the reasonable value and all practical use of the area.

Such an argument ignores the fact that in return for River Birch's promise to set aside common area, the City permitted River Birch to develop the subdivision tract in a more intensive manner than otherwise permitted. The City permitted this intensive development in precisely the manner that River Birch requested. River Birch has made significant profits from the developed subdivision. Looking at the three-acre area as a portion of the larger subdivision, we cannot hold that River Birch has been denied all use and prac-

tical value of the property. By setting aside common area, the City permitted River Birch to develop the 19.6 acres more densely than the Raleigh zoning ordinances would have otherwise permitted. By setting aside common area, River Birch was able to attract purchasers to the subdivision. River Birch has received all the use of the property which it sought and to which it was entitled according to the terms of the original preliminary plat submitted by it.

A requirement of dedication of park space for subdivision approval does not necessarily constitute a taking. *Aunt Hack Ridge Estates, Inc. v. Plan. Comm. of Danbury*, 27 Conn. Supp. 74, 230 A.2d 45 (1967). Where the subdivider creates the specific need for the parks, it is not unreasonable to charge the subdivider with the burden of providing them. *Billings Properties, Inc. v. Yellowstone County*, 144 Mont. 25, 33-36, 394 P.2d 182, 187-88 (1964). Here, the increased density of development renders necessary the setting aside of open space.

Denial of a project application for preliminary plat approval does not amount to an unconstitutional taking of land where the denial was based on a failure to meet valid requirements. *Szeles-Natale, Inc. v. Bd. of Comm'rs of Swatara Township, Dauphin County*, 28 Pa. Cmwlth. 563, 568, 368 A.2d 1336, 1338 (1977). Nor is there a violation when suspension or revocation of plat approval is due to a developer's failure to meet legitimate conditions of approval. *Parker v. Bd. of County Comm'rs of Dona Ana County*, 93 N.M. at 643-44, 603 P.2d at 1101. We conclude that denial of a project application which would violate the valid condition of a previously approved and substantially undertaken proposal works no taking of the three-acre area.

V.

We turn now to the assignments of error raised by the defendant-appellant Homeowners Association. These include one assignment of a substantive nature and several of a procedural cast. We will first address the substantive issue.

[5] Prior to trial, the trial judge granted River Birch's motion in limine to exclude parol evidence that the subdivision common area included the three-acre parcel which is the subject of this dispute. This evidence included numerous affidavits of Riverbirch Township home owners to the effect that River Birch's sales agents

**RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH**

[326 N.C. 100 (1990)]

indicated that River Birch intended to convey the three-acre parcel, and the sales agents used the preliminary plat and landscaping plan River Birch submitted to the City to illustrate this intent. The Homeowners Association urges on appeal that the unrecorded preliminary plat and landscaping plan are documents necessary to resolving a latent ambiguity in the "Declaration of Covenants, Conditions and Restrictions for the River Birch Subdivision." We agree.

A contract to convey an interest in land must satisfy the requirements of the statute of frauds. The contract must be in writing and signed by the party to be charged. N.C.G.S. § 22-2 (1986). Although the writing must contain all essential elements of a contract to convey land, *Satterfield v. Pappas*, 67 N.C. App. 28, 36, 312 S.E.2d 511, 516, *disc. rev. denied*, 311 N.C. 403, 319 S.E.2d 274 (1984), memoranda of land sales may be informal, *Hurdle v. White*, 34 N.C. App. 644, 239 S.E.2d 589 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978), and all provisions of the contract need not be in a single instrument, *Satterfield v. Pappas*, 67 N.C. App. at 35, 312 S.E.2d at 516. The essential elements of a contract for conveyance of land are the names of the grantor and grantee, the price or consideration, and a description of the property to be sold. *Hurdle v. White*, 34 N.C. App. at 648, 239 S.E.2d at 592.

> When a description leaves the land "in a state of absolute uncertainty, and refers to nothing extrinsic by which it might be identified with certainty," it is patently ambiguous and parol evidence is not admissible to aid the description. The deed or contract is void. *Lane v. Coe, supra* [262 N.C. 8,] at 13, 136 S.E. 2d [269,] at 273 [(1964)]. Whether a description is patently ambiguous is a question of law. *Carlton v. Anderson*, 276 N.C. 564, 173 S.E. 2d 783 (1970). "A description is . . . latently ambiguous if it is insufficient in itself to identify the property but refers to something extrinsic by which identification might possibly be made." *Lane v. Coe, supra* [262 N.C.] at 13, 136 S.E. 2d at 273.

*Kidd v. Early*, 289 N.C. 343, 353, 222 S.E.2d 392, 400 (1976). Thus, a description missing or uncertain in one document may be rendered certain by another and together the documents may satisfy the statute of frauds. *Simpson v. Beaufort County Lumber Co.*, 193 N.C. 454, 137 S.E. 311 (1927).

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

River Birch recorded a Declaration of Covenants, Conditions and Restrictions prior to the conveyance of the first subdivision unit. Article II, section 3 of the covenants recites:

> *Title to the Common Area.* The Declarant [River Birch] hereby covenants for itself, its heirs and assigns, that it will convey fee simple title to the Common Area to the [Homeowners] Association, free and clear of all encumbrances and liens, prior to the conveyance of the first lot, except utility and drainage easements.

This covenant to convey the "common area" creates an ambiguity regarding the identity and description of that area. As such, the ambiguity is latent. "A patent ambiguity raises a question of construction; a latent ambiguity raises a question of identity." *Lane v. Coe*, 262 N.C. at 13, 136 S.E.2d at 273.

Article I, section 4 of the recorded covenants provides some help in resolving the identity of the common area:

> "Common Area" shall mean all real property owned by the [Homeowners] Association for the common use and enjoyment of the owners. The Common Area to be owned by the [Homeowners] Association at the time of the conveyance of the first lot is described as follows: See Exhibit B Hereto.

Exhibit B reads:

> All of the property of River Birch Associates according to a plat of survey dated December 2, 1980 prepared by Al Prince and Associates, P.A. and being also all of Section 1 according to a map recorded in Book of Maps 1980, page 1066 of the Wake County Registry with the exception of the designated lots 1 through 15 inclusive as shown on said plat.

Article I, section 4 of the covenants makes evident that the land described in Exhibit B was not intended to be all the common area that River Birch covenanted to convey. Rather, Exhibit B describes only the common area to be owned by the Homeowners Association "*at the time of the conveyance of the first lot.*" This clause implies that there was more common area property which River Birch intended to convey in the future. Such in fact was the case, as River Birch by addendum to the covenants conveyed common area additional to that described in Exhibit B on the completion of each phase of the subdivision. Exhibit B and the subse-

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

quent addenda describe common area, but not necessarily *all* of the common area, that River Birch intended to convey.

The intentions of the parties are relevant to an evaluation of a description of land to be conveyed.

> [I]t is not necessary that the description should be given with such particularity as to make a resort to extrinsic evidence unnecessary. The doctrine '*Id certum est quod certum riddi potest*'[9] applies, and if the designation is so definite that the purchaser knows exactly what he is buying and the seller knows what he is getting, and the land is so described that the court can, with the aid of extrinsic evidence, apply the description to the exact property intended to be sold, it is enough.

*Lewis v. Murray*, 177 N.C. 17, 20, 97 S.E. 750, 751 (1919).

In *Lewis*, the Court upheld a contract of sale which described the property to be conveyed simply as "the Home Place." The party seeking to enforce the contract was permitted to present evidence that identified the land; that it was known as "the Home Place"; and that while the nonperforming party owned several tracts, he had lived only on this particular acreage.

> The presumption is strong that a description which actually corresponds with an estate owned by the contracting party is intended to apply to that particular estate . . . . When all the circumstances of possession, ownership and situation of the parties, and of their relation to each other and the property, as they were when the negotiation took place and the writing was made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement.

*Id.* at 20-21, 97 S.E. at 752, *cited in Hurdle v. White*, 34 N.C. App. at 649-50, 239 S.E.2d at 593. *See also Norton v. Smith*, 179 N.C. 553, 103 S.E. 14 (1920).

In *Lane*, this Court held that a contract to sell the "house and lots on 601 highway where his residence is" was a sufficient

---

9. "That is certain which can be made certain." Black's Law Dictionary 670 (5th ed. 1979).

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

description to satisfy the statute of frauds. This description admitted the possibility of specific identification through a showing of extrinsic evidence, either by reference to a map, a deed or a fixed monument. *Lane v. Coe*, 262 N.C. at 14, 136 S.E.2d at 273-74.

Like the descriptions in *Lewis* and *Lane*, the term "common area" as used in the covenants is so definite that the grantee knows exactly what he is receiving and the grantor knows what he is conveying. With the aid of extrinsic evidence, the court can apply the description to the exact property to be conveyed.

River Birch alleged that it was always its intention to develop the three-acre parcel in dispute in some fashion and that failure to label the parcel "[r]eserved for future development" was inadvertent error. River Birch based its allegation on the fact that the term "common area" appears on the western half of the southern portion of the plat and that the largest segment of this southern portion, the three-acre parcel in dispute, begins approximately in the middle of the southern portion and extends to the eastern boundary of the property. Nonetheless, by its own admission, the term "common area" appears on the plat, and there is no additional designation indicating an alternate use of the three-acre area. "Material evidence may be supplied by admissions in the pleadings." *Id.* at 15, 136 S.E.2d at 274. By reference to the preliminary plat that River Birch included in its complaint, we are able to determine that the "Common Area" referred to in the covenants includes the three-acre parcel in dispute. By the terms of its covenants, River Birch is obligated to convey that parcel to the Homeowners Association. The trial court incorrectly excluded evidence of the preliminary plat for the purpose of resolving a latent ambiguity in the identity of common area referred to in the covenants.

Moreover, the covenants indicate that they are for the benefit of the "River Birch Subdivision." The development of a subdivision is necessarily the subject of strict ordinancing, which in this case includes a requirement of plat filing and designation of common areas. The documents included in the application are a source to determine the extent of the common area which River Birch covenanted to convey. As required by the Raleigh city ordinance, River Birch indicated the location of common area on both the preliminary site plan and on the landscaping plan. These documents were competent to resolve the ambiguity in the description of

the common area, and it was error for the trial court to exclude them for this purpose.

The trial court should not have excluded affidavits of individual home owners describing the use of the preliminary and landscaping plats by sales agents to illustrate the location of the common area. This evidence was competent to show that the landscaping plan and preliminary plat were documents intended by the parties to identify the boundaries of the common area referred to in the covenants. This evidence, tending to show that the three-acre parcel is part of one contiguous area, is like that which the trial court improperly excluded in *Lane. Id.* at 15, 136 S.E.2d at 274.

Parol assurances made by a developer to prospective buyers regarding the general scheme or plans of development that the developer intends to pursue are admissible to establish the existence of such a scheme. *Warren v. Detlefsen,* 281 Ark. 196, 199, 663 S.W.2d 710, 711-12 (1984). Such parol evidence may be in the form of a field map, sales brochures, maps, advertising or oral statements on which purchasers relied. *Id.* In this case, the evidence establishes a general scheme of setting aside open space that included the three-acre parcel.

We do not suggest the affidavits are competent to identify the boundaries of the common area, for then the declarations would be used to alter the terms of the written agreement. However, where the declarations confirm that the parties intended certain documents to identify the boundaries of land referred to in other documents, then those declarations will be admitted for that limited purpose.

Moreover, the oral assurance that the common area would be conveyed in a landscaped state, given by the real estate agents to prospective home owners, was competent evidence. Where a contract to convey land that otherwise satisfies the statute of frauds is part oral and part written, parol evidence is admissible so long as it does not conflict with the writing. *Boone v. Boone,* 217 N.C. 722, 729, 9 S.E.2d 383, 387 (1940). Parol evidence of these assurances would merely affirm that the open area depicted on the landscaping plan was to be appropriately landscaped.

Thus, on this issue we hold that the trial court improperly excluded evidence of statements made to buyers. Additionally, the trial court should have admitted the preliminary plat and the land-

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

scaping plan as maps tending to identify the common area referred to in the declaration of covenants. This evidence was competent to support the Homeowners Association's claims for damages and should have been considered.

## VI.

[6] The trial court denied the motion of several home owners to intervene in this suit in their individual capacities. Assuming arguendo that the Homeowners Association has standing to pursue this issue on appeal, we hold that the individuals, though proper parties, were not necessary, and therefore there was no error in this ruling.

The individuals sought to intervene under Rule 24 of our Rules of Civil Procedure. N.C.G.S. § 1A-1, Rule 24 (1983). Parties may intervene as of right when a statute confers an unconditional right to intervene, N.C.G.S. § 1A-1, Rule 24(a)(1), or

> [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*

N.C.G.S. § 1A-1, Rule 24(a)(2) (1983) (emphasis added). There is no claim that a statute confers upon the individuals the right to intervene.

In a decision construing N.C.G\S. § 1-73,[10] the precursor to Rule 24, this Court held that the interest of a third party seeking to intervene as of right " 'must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment . . . . One whose interest in the matter in litigation is not a direct or substantial interest, but is an indirect, inconsequential, or a contingent one cannot claim the right to defend.' " *Strickland v. Hughes,* 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968) (quoting *Mullen v. Town of Louisburg,* 225 N.C. 53, 56, 33 S.E.2d 484, 486 (1945) ), *cited in Long v. City of Charlotte,* 306 N.C. at 212, 293 S.E.2d at 117. The interest of the individuals

---

10. The rules of intervention as set out in N.C.G.S. § 1A-1 make no substantive change in the rules as previously set out in N.C.G.S. § 1-73. *Long v. City of Charlotte,* 306 N.C. at 212 n.13, 293 S.E.2d at 117 n.13.

in the common area is indirect. Any interest the home owners have in common area derives through their membership in the Homeowners Association. The Homeowners Association is the party that has the direct interest in a determination as to whether the boundaries of the common area include the three-acre parcel. Thus, the individuals were not necessary parties to the action.

Moreover, the Homeowners Association adequately represented such interest that the individual home owners did have. The Homeowners Association asserted every claim that the individuals sought to assert, and, as members of the Homeowners Association, many of the individual home owners testified at trial. *Hillcrest Building Co. v. Peacock*, 7 N.C. App. 77, 171 S.E.2d 193 (1969), is not apposite, since the restrictive covenants in that case ran directly to the purchasers of subdivision lots and not to a home owners' association as in this case.

The individual home owners were in fact proper parties. A proper party is one whose interest may be affected by a judgment but whose presence is not essential for adjudication of the action. *Strickland v. Hughes*, 273 N.C. at 485, 160 S.E.2d at 316. Loss of the use of the three-acre parcel as common area would be likely to affect property values of the individuals' lots. Whether a proper but not necessary party may be permitted to intervene is within the sound discretion of the trial court. *Long v. City of Charlotte*, 306 N.C. at 212, 293 S.E.2d at 117. The trial court did not abuse its discretion when it denied the individual home owners' motion to intervene.

## VII.

[7] On motion of River Birch, the trial court ruled that the Homeowners Association did not have standing to prosecute claims for fraud and unfair trade practices. This ruling was correct.

To have standing the complaining association or one of its members must suffer some immediate or threatened injury. *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 342, 53 L. Ed. 2d 383, 393 (1977). Legal entities other than natural persons may have standing. "An association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 362 (1975).

RIVER BIRCH ASSOCIATES v. CITY OF RALEIGH

[326 N.C. 100 (1990)]

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. at 343, 53 L. Ed. 2d at 394. The Homeowners Association's claims for fraud and unfair trade practices fail to meet the third prong of this test.

When an organization seeks declaratory or injunctive relief on behalf of its members, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. at 515, 45 L. Ed. 2d at 364. *See Piney Mt. Neighborhood Assoc. v. Chapel Hill*, 63 N.C. App. 244, 247, 304 S.E.2d 251, 253 (1983) (association had standing to seek review of issuance of special use permit affecting its members). However, where an association seeks to recover damages on behalf of its members, the extent of injury to the individual members and the burden of supervising the distribution of any recovery mitigates against finding standing in the association. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531.9 at 620-21 (1984). In *Warth*, the United States Supreme Court denied the organization standing because "damages claims [were] not common to the entire membership, nor shared by all in equal degrees." *Warth v. Seldin*, 422 U.S. at 515, 45 L. Ed. 2d at 364.

There was no allegation by the Homeowners Association that representations regarding the three-acre parcel were made to each of its members. Nor is there any suggestion that River Birch made such representations to Homeowners Association members who purchased town homes on the secondary market. Thus, we cannot conclude that the damage claims are common to the entire membership of the Homeowners Association.

Nor is it likely that each Homeowners Association member shares the injury in equal degree. The measure of damages for fraud in the inducement of a contract is the difference between the value of what was received and the value of what was promised, *Horne v. Cloninger*, 256 N.C. 102, 123 S.E.2d 112 (1961), and is potentially trebled by N.C.G.S. § 75-16. In this instance, damages

suffered by the individual members of the Homeowners Association would vary based upon the locational relationship between the member's town home and the three-acre parcel, among other things.

Moreover, permitting the Homeowners Association to pursue the fraud claim would deprive its members of an alternative remedy. By electing the damages remedy that is available in claims of fraud, the Homeowners Association would have deprived its members of the right to seek rescission of the contract, which is an alternative remedy to damages. *Horne v. Cloninger*, 256 N.C. 102, 123 S.E.2d 112. We thus conclude that the Homeowners Association did not have standing to assert any claims for fraud or unfair trade practices that members of the association might have had.

## VIII.

[8]  The Homeowners Association asks us to rule that it is a third-party beneficiary of contracts made between its individual members and River Birch. In the "List of Issues for Trial" to which the Homeowners Association stipulated, there is no indication that the Homeowners Association proceeded on a third-party beneficiary theory. Rather, the theory of recovery stated in the complaint was based upon direct contract with the individual members of the Homeowners Association. Plaintiff asserts further that the Homeowners Association represented to the trial judge in chambers that it was not seeking recovery under a third-party beneficiary theory. Failure to argue a theory of recovery below prohibits its assertion on appeal. *Plemmer v. Matthewson*, 281 N.C. 722, 725, 190 S.E.2d 204, 206 (1972). We do not reach this issue since the Homeowners Association waived the matter.

In summary, we hold that under the General Statutes of North Carolina, a city may by ordinance provide for conveyance of common area by a subdivision developer to the home owners' association of that subdivision. Such a conveyance must be in accord with the plat as submitted and approved.

Where there was a valid preexisting condition governing development of a subdivision to which the developer agreed, a city does not improperly exercise its police power by denying an application which would violate that condition. In this case, the City of Raleigh approved the application for Riverbirch Township on the condition that actual development of the property would be in substantial conformance with the project as depicted on the

preliminary plat. The approved project was unchanged by subsequent amendment affecting the common area. The fact that the common area depicted on the preliminary plat exceeds the minimum required by city ordinance does not alter the basic condition of approval, nor does enforcement of the condition work a taking of land.

We hold furthermore that the term "Common Area" as set out in the declaration of covenants is a latently ambiguous description of the property to be conveyed to the Homeowners Association. Reference to the preliminary plat and the landscaping plat is proper to identify the boundaries of the common area. Evidence of assurances by plaintiff's sales agents tending to establish that the preliminary plat and the landscaping plan were intended to identify the boundaries and condition of the common area was also admissible. The trial court erred in excluding parol evidence identifying the boundaries and condition of the land to be conveyed as common recreation area.

The trial court did not err when it denied the motion to intervene of certain individual home owners. These were proper but not necessary parties. The trial court was also correct when it ruled that the Homeowners Association did not have standing to prosecute claims for fraud and unfair trade practices.

Accordingly, we affirm in part and reverse in part the decision of the trial court and remand for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.