*911
 
 OPINION
 

 Per Curiam:
 

 Appellant Glenbrook Homeowners Association (the Association) sued respondent and cross-appellant Glenbrook Company (Glenbrook) claiming that Glenbrook was obligated to convey to the Association certain common areas in a planned residential community developed by Glenbrook (the development).
 

 After a bench trial, the district court determined that the Association’s action for misrepresentation failed for lack of detrimental reliance. It concluded that an action based on NRS Chapter 278A, Nevada’s Planned Unit Development (PUD) Law, was appropriate and determined that certain property should be conveyed to the Association, that other property should remain with Glenbrook, and that neither party was the prevailing party.
 

 The Association appeals. It contends the district court erred in failing to order conveyance of all common areas and in failing to award it attorney’s fees. Glenbrook cross-appeals. It contends that the court violated NRS Chapter 278A in determining what constituted the plan for the development and improperly ordered Glenbrook to convey certain property to the Association.
 

 We conclude that the Association’s appeal lacks merit. In regard to Glenbrook’s cross-appeal, we reverse the award of certain properties to the Association and remand for determination of another issue in light of a concession made by Glenbrook on appeal.
 

 FACTS
 

 In 1973, Glenbrook Properties, a corporation formed and owned by the Nahas family, acquired an option to purchase stock in Glenbrook Company, a corporation which owned land on the east side of Lake Tahoe. Glenbrook Properties intended to create a development on about 700 acres of that land. In 1975 and 1976, Glenbrook developed a plan for the development which it submitted to the Tahoe Regional Planning Agency (TRPA). A rezoning map and Glenbrook Information Report were submitted to the TRPA at that time. The report laid out the “master plan” for the development. TRPA and Douglas County both approved the zoning plan.
 

 In three transactions from 1976 to 1978, Glenbrook Properties acquired title to all the land owned by Glenbrook Company. During negotiations to acquire the land, Glenbrook Properties
 
 *912
 
 agreed with Glenbrook Company to maintain approximately 525 of the approximately 700 acres as common area open space.
 
 [1]
 

 On June 17, 1977, Glenbrook recorded a declaration of covenants, conditions, and restrictions (CCRs) which created the Association and encumbered approximately 47 acres of the planned development known as Parcel I. Parcel I was developed as Unit 1. Parcel II was not yet owned by Glenbrook; it was developed later as Units 2 and 3. In the CCRs, Glenbrook retained the right to annex further property to the CCRs. The CCRs defined four types of common areas within both parcels and required Glenbrook to convey to the Association the common area within any property annexed to the CCRs.
 

 The Association sued Glenbrook, claiming that Glenbrook was obligated to convey to the Association certain common areas in the development. A bench trial was held from November 7 to 10, 1988. The Association presented documents of various kinds, e.g., environmental information reports and promotional materials, wherein Glenbrook indicated that various lands in the development would be common areas or owned by the Association. It also presented testimony from purchasers of lots at the development that Glenbrook and its sales agents had orally represented that certain properties would be provided to the Association. The district court issued its first judgment in this case on February 14, 1989.
 

 The district court found that Glenbrook Realty and its agents acted as Glenbrook’s exclusive sales agents for the entire development. Agents of Glenbrook Realty and Ronald Nahas, an officer and shareholder of Glenbrook, made various oral and written representations, some of which were false, to potential and actual purchasers in regard to providing a clubhouse, managerial facilities, and some meadows to the Association. However, the court found that no purchaser relied to his or her detriment on any false representation. Thus, it concluded that the Association’s action for misrepresentation failed for lack of detrimental reliance, and the Association did not appeal this ruling. However, the court concluded that the development was a PUD under NRS Chapter 278A and that the Association could enforce provisions of the development plan pursuant to NRS 278A.380 and NRS 278A.400.
 

 The district court found that Glenbrook consistently maintained that the Glenbrook Golf Course was to remain privately owned, never promised to convey it to the Association, and never
 
 *913
 
 annexed it to the CCRs. It concluded that the Association had no right to own the golf course. It reached similar conclusions regarding some other parcels of land.
 

 The district court found that Glenbrook had annexed all of Unit 2 to the CCRs and ordered Glenbrook to convey to the Association four common area lots in that unit. It found that facilities for maintenance and security of Association property were part of the plan and ordered Glenbrook to renovate “the Wrangler’s cabin” and convey it and its associated maintenance buildings and yard to the Association. It also found that representations were made that “the Hamlet meadows” would be conveyed to the Association and ordered Glenbrook to convey the Hamlet meadows, without easements providing for cattle grazing.
 

 The district court concluded that “the Clubhouse,” for a number of reasons, including its former use as a meeting place for Association members, should belong to the Association. It ordered Glenbrook either to convey the Clubhouse to the Association or to convey another parcel of land and pay the Association $500,000 so that it could build a clubhouse for itself.
 

 The parties’ appeals of the district court’s original judgment were dismissed because a final judgment on the entire action had not been entered. The Association then filed a second amended complaint. Both parties moved for summary judgment, and the district court entered a supplemental judgment on October 7, 1993, finding that the development was complete. The court reiterated many of its findings and conclusions from the first judgment, some of which acted as res judicata to some of the Association’s claims.
 

 The district court granted summary judgment for the Association in regard to four common area lots in Unit 3 and ordered their annexation and conveyance to the Association. It ordered Glenbrook to grant expanded recreational easements to the Association for three beach areas and ordered an easement in favor of the Association along another beach. It declared that the Association would have the right to enforce the deed covenant requiring that one parcel conveyed by Glenbrook to third parties be maintained as open space. Finally, it limited development on another parcel of land owned by Glenbrook.
 

 The district court found neither party to be the prevailing party and ordered each to bear its own attorney’s fees and costs.
 

 Both parties have appealed. The Association argues that all common areas should be conveyed to it, including the golf course. Glenbrook argues that the district court improperly considered more than the development plan as defined by statute in ordering Glenbrook to convey title to the Clubhouse, the Wrangler’s cabin and associated property, and the Hamlet meadows.
 

 
 *914
 

 DISCUSSION
 

 We are presented with a case based on and defined by NRS 278A.400. The Legislature has strictly limited the evidence relevant to such an action. Without these statutory limits the analysis, and possibly the results, of this case would diifer.
 
 See infra
 
 note 2.
 

 The Development Plan Under NRS Chapter 278A
 

 NRS 278A.400(1) provides that all provisions of a plan for a planned unit residential development run in favor of the development’s residents and may be enforced by them at law or equity, “but only to the extent expressly provided in the plan.” NRS 278A.400(2) further provides: “No provision of the plan exists in favor of residents on the planned unit residential development except as to those portions of the plan which have been finally approved and have been recorded.” NRS 278A.060 defines “plan” as:
 

 The provisions for development of a planned unit development, including a plat of subdivision, all covenants relating to use, location and bulk of buildings and other structures, intensity of use or density of development, private streets, ways and parking facilities, common open space and public facilities. The phrase “provisions of the plan” means the written and graphic materials referred to in this section.
 

 The district court concluded that the plan for the development included an information report and master plan map (submitted by Glenbrook to regional and county agencies early in the process of seeking approval of the development), the final subdivision maps, the CCRs and their supplements, the Association’s bylaws and articles of incorporation, and “the physical features, structures and amenities” within the area of the development when the above documents were recorded. It further concluded that “an action based on NRS 278A is appropriate because of recorded maps, C,C,&R’s, the physical features, structures and amenities existing within the area, and the verbal representations made by Glenbrook or its agents.”
 

 Questions of law such as interpretation of statutory provisions are reviewed de novo by this court. SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993). The district court’s inclusion of physical features, structures, and amenities as part of the plan was error. In reading NRS 278A.060, the district court apparently interpreted “location and
 
 *915
 
 bulk of buildings and other structures, intensity of use or density of development, private streets, ways and parking facilities, common open space and public facilities” as plan elements. However, when the statute is properly parsed, these items do not stand as independent elements of a plan, but as appropriate subjects for
 
 covenants
 
 which compose a plan. Moreover, the statute plainly states: “The phrase ‘provisions of the plan’ means the
 
 written and graphic
 
 materials referred to in this section.” NRS 278A.060 (emphasis added). Thus, the court erred in considering physical features to be part of the development plan.
 

 The district court also erred by including the information report and master plan map in the plan because they were never “recorded,” as required by NRS 278A.400(2). The district judge apparently considered that filing the report and the map with regional and county authorities during the zoning approval process constituted “recordation.” NRS 278A.400(1) refers to provisions “recorded by plat, covenant, easement or otherwise” — these specified documents are all entered with a county recorder. Given this context, we conclude that as used in the statute, “recorded” has a specific meaning: entry in the county recorder’s registry of real estate titles. However, inclusion of the unrecorded map and report was harmless error because Glenbrook has not shown that their inclusion led to a determination by the court which aifected Glenbrook’s substantial rights. NRCP 61.
 

 It appears that the rationale for limiting enforceable provisions of a development plan in this way is to promote flexibility in the development of PUDs and certainty as to what plans are enforceable commitments on the part of a developer as opposed to nonbinding proposals and ideas. A “prime objective” of NRS Chapter 278A is to promote “flexibility of development.” NRS 278A. 110(3). A developer can maintain flexibility until it receives final approval for and records provisions of the plan. At that point, the features of a PUD enforceable under NRS 278A.400 are established. For example, in this case the TRPA approved zoning for preliminary plans which proposed higher density development than Glenbrook ultimately adopted in its final, recorded plan documents. The Association is not seeking enforcement of the denser development originally proposed by Glenbrook but does seek enforcement of proposals which Glen-brook made in regard to common areas. The statutory scheme established by the Legislature prevents either residents or a developer from picking and choosing in this way among the many
 
 *916
 
 features which may be proposed for a PUD but not ultimately adopted.
 
 [2]
 

 The Association contends that the district court properly considered non-plan documents and oral representations as parol evidence necessary to clarify ambiguities in the plan. Glenbrook counters that consideration of any oral statements violated the statute of frauds.
 

 In River Birch Assoc. v. City of Raleigh, 388 S.E.2d 538 (N.C. 1990), a developer of a subdivision recorded a declaration of CCRs in which it covenanted to convey a common area to the homeowners association.
 
 Id.
 
 at 552. The CCRs constituted a written contract to convey land, but the covenant created a latent ambiguity as to the identity and description of the common area.
 
 Id.
 
 at 551-52. Admitting parol evidence, both documentary and oral, to resolve the ambiguity did not violate the statute of frauds.
 
 Id.
 
 at 553.
 

 In accordance with the
 
 River Birch Assoc.
 
 case, parol evidence was admissible in this case to the extent that it was used to resolve ambiguities existing in the plan. The district court found the plan ambiguous in some way but did not elaborate.
 
 See infra
 
 note 3 regarding the ambiguity to which the court was likely referring. The court did not state that it considered evidence extraneous to the plan in order to resolve any ambiguity; it simply stated that since Glenbrook drew up the CCRs, Glenbrook “will not now be allowed to use ambiguity in the document for its own benefit.” It appears that the court did not resort to extraneous evidence to
 
 *917
 
 resolve any ambiguity of substance but simply construed the plan against its drafter, Glenbrook, as was proper.
 
 See
 
 Dickenson v. State, Dep’t of Wildlife, 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994) (“when a contract is ambiguous, it will be construed against the drafter”).
 

 The district court also acted in its capacity as a court of equity, but this did not give it unqualified authority to consider non-plan documents and oral statements by Glenbrook. NRS 278A.400 permits enforcement of a development plan “at law or equity,” yet as already discussed, it also provides that provisions of the plan “run in favor of the residents” only if “expressly provided in the plan” and only as to “portions of the plan which have been finally approved and have been recorded.” NRS 278A.400(1) and (2). Therefore, it seems unlikely the Legislature intended to allow courts to enforce otherwise unenforceable provisions simply by invoking equity.
 
 See
 
 Longview Fibre Co. v. Cowlitz County, 790 P.2d 149, 153 (Wash. 1990) (despite a harsh result, the court would “not give relief on equitable grounds in contravention of a statutory requirement”).
 

 Thus, we conclude that for the purposes of an action under NRS 278A.400, the district court improperly considered evidence extraneous to the recorded provisions of the plan.
 

 Provisions of the Glenbrook Development Plan Affecting Ownership of Common Areas
 

 The CCRs, subdivision maps, and the Association’s articles of incorporation were properly included in the development plan. The CCRs are crucial to determining ownership of common areas. They were drawn up and recorded before Glenbrook gained title to Parcel II and define four types of common areas.
 

 Section 2.13 of the CCRs defines “Property Common Area” as the area “available for the common use and enjoyment” of residents, “including driveways, walkways, paths, parking areas, open spaces, planted and landscaped areas, and utility facilities.” Initially, this category consisted of common areas within Parcel I. “As portions of Parcel II are annexed, the Property Common Area shall be expanded to include the above defined areas within the property so annexed.” Per section 2.14, “Parcel II Common Area” is that area “available for the common use and enjoyment” of Association members, other than General Forest Area or Recreational Common Area, including easements for use of certain property in Parcel II and to install utilities. Per section 2.15, “General Forest Area” is certain defined forest land within Parcel II, “to the extent the right to use portions thereof was or is
 
 *918
 
 hereafter granted” to the Association by Glenbrook. Per section 2.16, “Recreational Common Area” is certain defined recreational area within Parcel II, “to the extent the right to use portions thereof was or is hereafter granted” to the Association by Glenbrook. Recreational Common Area primarily included the golf course and beach areas.
 

 Sections 11.1 and 11.2 of the CCRs provide that Glenbrook has the right to annex to the CCRs portions of Parcel II to which it might gain title. As to ownership of common areas in Parcel I, section 5.1 provides: “The Property Common Area shall be conveyed to and owned by the Association.” Regarding the three types of common area in Parcel II, sections 6.1, 6.3, and 11.3 provide that Glenbrook has discretion whether or not to convey them or parts of them to the Association in the event Glenbrook acquires fee title to any of them. However, this discretion is qualified by section 11.4(c): “The Common Area, if any, in each portion of the property annexed shall be conveyed to the Association.”
 
 [3]
 

 The scheme under the CCRs can be summarized as follows. The Association was to own common areas within Parcel I. If Glenbrook gained title to land within Parcel II, it had discretion to annex such land to the CCRs. If it did so, all common areas within the annexed land had to be added to the Property Common Area and conveyed to the Association. The district court’s judgments reflect this reading of the CCRs.
 

 The Association’s Appeal
 

 The Association asserts generally the right to own all “common areas” not already conveyed to it, including the golf course. Its argument is simply this: by designating any land as common area of any kind, Glenbrook committed to conveying that land to it. However, the Association does not address the provisions of the CCRs discussed above which define the common areas and deal with their ownership. In light of these recorded provisions of the development plan and NRS 278A.400, the Association’s simplistic argument fails.
 

 
 *919
 
 The Association also asserts that statutory provisions require conveyance of all common areas to it but is unable to support this assertion. It cites NRS 278A.120 for the proposition that common areas must be conveyed either to it or to a governmental body. Actually, NRS 278A.120 provides in part that an ordinance establishing a PUD “must require that any common open space resulting from the application of standards for density or intensity of land use
 
 be set aside for the use and benefit
 
 of the residents or owners of the development.” (Emphasis added.) The underlined language does not require conveyance of such common open space to owners or residents, and the Association offers no authority for construing it that way. We conclude that this provision requires only that the right of residents and owners to use and benefit from this type of open space be assured. This could be done, for example, through easements or covenants as well as grants of title.
 

 NRS 278A.040 supports this conclusion. NRS 278A.040 defines “common open space” as land or water or “easements, licenses or equitable servitudes within the site designated for a planned unit development which is [sic] designed and intended for the use or enjoyment of the residents or owners . . . .” Thus, common open space may be maintained through an easement, license, or equitable servitude; it is not necessary that residents own such space.
 

 To sum up, the CCRs require conveyance only of common areas within areas annexed to the CCRs. NRS 278A.120 requires only that certain common areas be “set aside.” Therefore, to establish the right to
 
 own
 
 a common area, the Association must show either that Glenbrook annexed the property or that it somehow otherwise obligated itself to convey the property.
 

 The district court therefore properly rejected the Association’s argument that mere designation of land as common area established its right of ownership. The court concluded, for example, that although the golf course was situated on Recreational Common Area, the Association had no right to own it. It found that Glenbrook did not annex the golf course lot to the CCRs and that Glenbrook consistently maintained that the golf course was to remain privately owned and never promised to convey it to the Association.
 

 The Association does not claim that the golf course was annexed. It argues that Glenbrook promised that the Association would own the golf course, citing for example the Glenbrook Information Report of August, 1975. This is an unrecorded
 
 *920
 
 document which does not establish enforceable provisions of the development plan.
 

 Even assuming that this report was relevant evidence, nothing in the record indicates that it was aimed at or read by potential buyers. Moreover, the report only sets forth Glenbrook’s intent to allow the golf course to remain open to nonresidents “until the density of play becomes too great to accommodate owners, renters and guests at Glenbrook,” at which time it will be closed to the general public. The report does not indicate that the golf course will be owned by the Association. Much of the Association’s proffered evidence reveals similar inadequacies.
 

 Alternatively, the Association frames the issue as one of inconsistent enforcement of the development plan and cites case law in which reciprocal negative servitudes or easements were found binding on all lots in a subdivision. This rule of law only restricts what an owner may do with his or her land; it does not require conveyance of title, as the Association seeks. The Association cites River Birch Assoc. v. City of Raleigh, 388 S.E.2d 538 (N.C. 1990), which did require conveyance of a common area to a homeowners association. However, this result was based on a city ordinance which required such conveyance.
 
 Id.
 
 at 542. No equivalent legislation applies here.
 

 Accordingly, we affirm the district court’s judgment in regard to the Association’s appeal because'the Association has failed to show that Glenbrook annexed the property the Association wants title to or that Glenbrook somehow otherwise obligated itself to convey the property.
 

 Glenbrook’s Cross-Appeal
 

 1.
 
 The Clubhouse and Wrangler’s Cabin
 

 Glenbrook contends that the district court erred in ordering it to convey the Clubhouse, the Wrangler’s cabin and associated property, and the Hamlet meadows to the Association.
 

 The district court ordered Glenbrook either to convey the Clubhouse or another parcel plus money so that the Association could build.a clubhouse. It found that the Clubhouse was represented to be Recreational Common Area in the map attached to the CCRs as Exhibit B. However, this map is small and does not indicate the location of the Clubhouse or other buildings. No testimony placed the Clubhouse within the Recreational Common Area, and the recorded subdivision map shows it to be outside that area. Thus, the court’s finding is not supported by the record.
 

 The district court recognized that the Association had no right
 
 *921
 
 to own unannexed common area, and the Clubhouse lot was never annexed. The court therefore recited the following additional evidence in deciding that the Clubhouse should belong to the Association. Glenbrook had represented that the Clubhouse “would become a community gathering place for the residents.” Glenbrook “established its use” as a meeting place for Association members by holding members and directors meetings there for several years. Even though the Association had filed suit against Glenbrook and put the status of the Clubhouse at issue, Robert Nahas, the major officer and shareholder of Glenbrook, renovated it and kept it for his personal use. The court did not cite the evidence adduced at trial which established that until 1989 Glenbrook cast a vote at Association homeowner meetings based on the Clubhouse parcel.
 

 The district court erred in basing its ruling on this evidence. None of this evidence establishes a provision for conveyance of the Clubhouse to the Association enforceable under NRS 278A.400. Therefore, the district court erred in awarding the Clubhouse, or equivalent relief, to the Association.
 

 The district court concluded that the Wrangler’s cabin and its equipment buildings and yard were represented to buyers and owners “by their very existence” to be part of the plan because the CCRs made the Association responsible for maintaining the property conveyed to it. To facilitate such maintenance, the court ordered Glenbrook to renovate and convey the Wrangler’s cabin, maintenance buildings, and yard to the Association. As discussed above, the district court erred in considering physical features to be part of the development plan under NRS Chapter 278A. It therefore erred in concluding that conveyance of managerial facilities was an enforceable provision of the plan based on the presence of these facilities.
 

 2.
 
 The Hamlet Meadows
 

 The district court found that the Hamlet open meadow area was common open space resulting from the application of standards for density or intensity of land use in the development and therefore had to be set aside for the use and benefit of the residents and owners. For this reason, the court ruled that Glen-brook must convey the Hamlet meadows to the Association, without easements for cattle grazing.
 

 Glenbrook appealed this ruling but conceded in oral argument before this court that about 80 acres of meadowland “below the rodeo grounds and east of Parcel C” should be conveyed to the Association as open space. It is not clear from the record what area the district court considered to constitute “the Hamlet mead
 
 *922
 
 ows.” It is therefore not clear whether an issue remains in regard to ownership of the Hamlet meadows.
 

 We therefore remand this issue to the district court to determine precisely what meadowland Glenbrook has agreed to convey and whether that agreement satisfies the court’s order, rendering the issue moot. If the issue remains alive after remand, then this court, perhaps with the benefit of a clearer record, can decide this issue if it is again appealed.
 

 Attorney’s Fees
 

 The Association asserts that the district court erred in not finding it to be the prevailing party and not awarding it attorney’s fees. Whether to award attorney’s fees is within the discretion of the district court; its decision will not be reversed absent manifest abuse of that discretion. County of Clark v. Blanchard Constr. Co., 98 Nev. 489, 492, 653 P.2d 1217, 1220 (1982).
 

 The district court stated: “Because of the complicated factual setting and because of the multiplicity of issues, combined with the complexity of settlement negotiations in this case, it is not possible to say who prevailed at trial.” Each party won on some issues and lost on others. We conclude therefore that the district court did not abuse its discretion in refusing to award attorney’s fees.
 

 CONCLUSION
 

 The district court did not err in rejecting the Association’s claim to all property designated as common area since NRS 278A.400 and the CCRs precluded such a simplistic result. We affirm the court’s judgment in regard to Glenbrook’s ownership of the golf course and other properties sought by the Association.
 

 The district court did err in considering evidence extraneous to the development plan in determining that certain properties should be conveyed to the Association.
 
 See
 
 NRS 278A.400. Therefore, it erred in awarding the Clubhouse and Wrangler’s cabin to the Association, and these awards are reversed. The issue regarding ownership of the Hamlet meadows may be moot, given the concession made by Glenbrook before this court. This issue is remanded for determination by the district court.
 

 We affirm that portion of the district court’s judgment refusing to award attorney’s fees to either party.
 

 [1]
 

 In June, 1988, after this action was filed, Glenbrook Properties merged into Glenbrook Company, so hereafter we refer to Glenbrook Properties also simply as Glenbrook.
 

 [2]
 

 It does not follow that NRS 278A.400 immunizes a developer from all liability for any fraudulent representations made in promoting a PUD as long as they were not made in writing and recorded. The district court presumed that residents generally still have common law remedies available for fraudulent misrepresentation; it simply determined that in this case the Association failed to prove an element of this cause of action. This presumption appears correct. It is consistent with NRS Chapter 116, governing common-interest communities created after January 1, 1992, wherein the Legislature provided that general principles of law, including those of fraud and misrepresentation, supplement the chapter’s provisions as long as they are not inconsistent. NRS 116.1108.
 

 In this case, misconduct by Glenbrook is not actionable under NRS 278A.400. After its plans were apparently firm, there is evidence to suggest that Glenbrook intentionally misled buyers as to the benefits associated with purchasing a lot in the development, which is not a matter of good faith flexibility in implementing a planned development. However, this issue is not before us. The district court found no detrimental reliance because the evidence showed that lots were so attractive that buyers would have bought them even if they had known, for example, that the Association was not going to own the Clubhouse or Hamlet meadows. The Association did not appeal this issue.
 

 [3]
 

 Section 11.4(c) of the CCRs is broader than section 2.13, quoted above. Within annexed lands, section 11.4(c) requires conveyance of “Common Area, if any,” while section 2.13 provides for expansion of the common area owned by the Association by inclusion of “defined” areas such as driveways, etc. Glenbrook apparently sought to narrow the effect of section 11.4(c) by reference to section 2.13. This may be the ambiguity in the CCRs which the district court referred to and would not allow Glenbrook to use for its own benefit.