An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-802

Filed 1 October 2025

Moore County, No. 22CVS001522-620

RICHARD HILLIARD, DANIELLA MARIA PETTINARI, GILLIAM McCONNELL AIRFIELD, LLC, and RAPTOR LLC, Plaintiffs,

v.

ROLAND GILLIAM and NANCY J. GILLIAM, Defendants.

Appeal by Plaintiffs from orders entered 5 June 2024 and 24 June 2024 by Judge W. Taylor Browne in Moore County Superior Court. Heard in the Court of Appeals 8 April 2025.

> *RHD Legal, by Robert S. Shields, Jr., and Mark L. Hayes, for Plaintiffs-Appellants.*

> *Van Camp, Meacham & Newman, PLLC, by Thomas M. Van Camp, for Defendants-Appellees.*

GRIFFIN, Judge.

Plaintiffs Gilliam McConnell Airfield, LLC, Richard Hilliard, and Daniella Maria Pettinari appeal from the trial court's order granting Defendants Roland Gilliam and Nancy J. Gilliam's motion to dismiss Plaintiffs' claim for breach of contract. Plaintiffs also appeal the trial court's order granting Defendants' motion to

compel discovery against them. Plaintiffs argue the trial court erred by overruling a prior decision of another trial court judge. Alternatively, Plaintiffs contend their claims were sufficient to survive dismissal under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiffs also contend the trial court abused its discretion by awarding costs associated with obtaining untimely discovery under Rule 37. We affirm the trial court's orders.

## I. Factual and Procedural Background

Plaintiffs and Defendants met in 2018 at the Gilliam McConnell Airfield (the "Airfield") in Carthage, North Carolina. Between 2018 and 2020, Plaintiffs and Defendants resolved multiple real estate transactions conveying property at the Airfield. This appeal concerns an alleged agreement in which Defendants were to purchase the entire remaining Airfield from Plaintiffs.

At some time during 2019 and 2020, Plaintiffs and Defendants began to discuss the sale of the Airfield from Defendants to a company owned by Plaintiff Hilliard. The parties determined the purchase price of the Airfield would be $2,515,000— wholly financed by Defendants with no down payment from Plaintiffs. The purchase price depended, though, on Defendants' pending decision whether to exclude a hangar from the sale; if Defendants kept the hangar, the price would reduce by $200,000.

The parties scheduled a closing date of 17 February 2022 for the sale of the Airfield. On 15 February 2022, Buck Adams, Plaintiffs' attorney, sent a packet of proposed closing documents to Hurley Thompson, Defendants' attorney. The

documents included, *inter alia*, a general warranty deed for the transfer of the Airfield. Thompson approved the documents based upon his understanding of the terms of the sale at that time. On the morning of 16 February 2022, Defendants signed the deed in Thompson's office. At 5:00 p.m. on February 16, Thompson sent the deed to Adams for Adams to review in preparation for closing the following day.

However, on the morning of 17 February 2022, Defendants told Thompson that the parties could not reach an agreement on material disputes regarding: (1) which party would pay excise taxes at closing; (2) the amount of rent Defendants would pay Plaintiffs to continue operating a restaurant located on the Airfield after the sale; (3) whether Defendants would have to pay to store items at the Airfield after the sale; and (4) whether Defendants would retain ownership of the hangar to reduce the purchase price by $200,000. Specifically, though Plaintiffs and Defendants had previously discussed who would pay the excise taxes at closing, Plaintiffs insisted on February 17 that they would only pay the excise taxes if Defendants increased the amount of rent owed to operate the restaurant and also paid rent to store items at the Airfield after the sale closed. Defendants did not agree with Plaintiffs' newly proposed terms.

Thompson relayed Defendants' concerns to Adams and requested the deed be returned. Adams returned the deed to Thompson, which he then destroyed; neither the draft deed nor any other document relating to the transfer of the Airfield was ever signed by Plaintiffs or recorded.

On 8 December 2022, Plaintiffs filed a complaint in Moore County Superior Court initiating the present action against Defendants. As of December 2023, following multiple filings to amend the parties named and claims alleged, Plaintiffs' complaint alleged claims for breach of contract and unjust enrichment against Defendants. On 18 December 2023, Defendants filed a motion for summary judgment against Plaintiffs' claims.

On 21 February 2024, Defendants also filed a motion to dismiss Plaintiffs' claims under Rule 12(b)(6) of the North Carolina General Statutes (the "First 12(b)(6) Motion"). In response, on 22 February 2024, Defendants filed a motion to amend their complaint to conform to the evidence and attached a copy of the proposed amended complaint to the motion.

On 4 March 2024, Judge Craig Croom held a hearing on Plaintiffs' motion to amend complaint, Defendants' motion for summary judgment, and Defendants' First 12(b)(6) Motion. On 8 March 2024, Judge Croom announced in open court he intended to grant Plaintiffs' motion to amend complaint. The record shows Judge Croom also declared he would withhold ruling on Defendants' First 12(b)(6) Motion because he would permit Plaintiffs to amend their complaint. On 15 March 2024, after the hearing on the matter but before Judge Croom entered a written order, Plaintiffs filed their amended complaint (the "Second Amended Complaint").

After this filing, on 20 March 2024, Judge Croom entered an order ("the Croom Order") granting Plaintiffs' motion to amend complaint and denying Defendants'

motion for summary judgment. The Croom Order was silent as to Defendants' First 12(b)(6) Motion.

On 19 April 2024, after Judge Croom entered the Croom Order, Defendants filed an answer to the Second Amended Complaint. On 26 April 2024, Defendants filed a motion under Rules 12(b)(6) and 12(c) of the North Carolina General Statutes (the "Second 12(b)(6) Motion") requesting the court dismiss Plaintiffs' breach of contract claim in their Second Amended Complaint.[1] On 20 May 2024, Defendants filed a Rule 37 motion to compel discovery against Plaintiffs for failure to wholly and timely respond to discovery requests.

On 31 May 2024, Judge W. Taylor Browne held a hearing on Defendants' Second 12(b)(6) Motion and motion to compel discovery. On 5 June 2024, Judge Browne entered a written order ("the Browne Order") dismissing Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6). On 24 June 2024, Judge Browne entered a written order instructing Plaintiffs to comply with Defendants' discovery requests and requiring Plaintiffs to pay Defendants $10,047.50 in recompense for expenses incurred (the "Discovery Order").

---

[1] On 22 April 2024, Defendants filed a motion for partial summary judgment against Plaintiffs' claim for breach of contract under Rule 56. It appears from the record, though, that Judge Browne never issued a ruling on this motion, opting instead to dismiss the matter through Defendants' subsequent Second 12(b)(6) Motion.

Plaintiffs timely appeal from the trial court's Browne Order and its Discovery Order.[2]

## II.  Analysis

Plaintiffs contend the trial court erred by dismissing their claims because the Browne Order overruled the prior decision of another superior court judge entered in the Croom Order.  Alternatively, Plaintiffs contend the trial court improperly granted Defendants' Second 12(b)(6) Motion because their Second Amended Complaint sufficiently pled their claim.  Plaintiffs also contend the trial court abused its discretion entering the Discovery Order by awarding Defendants costs for Plaintiffs' failure to timely deliver discovery.  We address each argument in turn.

### A. Overruling Another Superior Court Judge

Plaintiffs first assert the trial court erred because the "[Browne Order] granting Defendants' [Second 12(b)(6) Motion] overruled [the Croom Order] denying [Defendants'] motion for summary judgment."  In so doing, Plaintiffs contend, the Browne Order overruled a prior decision by another superior court judge on the same issues.  We disagree.

"It is well established that one superior court judge may not ordinarily modify, overrule, or change the judgment or order of another superior court judge previously

---

[2] When Plaintiffs filed their notice of appeal, their claim for unjust enrichment against Defendants was still pending in the trial court.  However, on 8 January 2025, Plaintiffs voluntarily dismissed their unjust enrichment claim, leaving no matters left to be decided by the trial court in this case.

entered in the same case." *In re Royster*, 361 N.C. 560, 563, 648 S.E.2d 837, 840 (2007) (citation omitted).

However, the Browne Order ruled upon a motion made in response to Plaintiffs' Second Amended Complaint, while the Croom Order ruled upon an earlier version of Plaintiffs' complaint. Our Courts have long recognized that an amended complaint supersedes prior iterations of the complaint at the time it is filed. *Burrell v. Dickson Transfer Co.*, 244 N.C. 662, 665, 94 S.E.2d 829, 832 (1956) (holding, upon the case's review by a second judge, "[t]he original complaint had been superseded by the amended complaint"); *accord Sarno v. Sarno*, 255 N.C. App. 543, 555, 804 S.E.2d 819, 828 (2017); *Hyder v. Dergance*, 76 N.C. App. 317, 319, 332 S.E.2d 713, 714 (1985); *Hughes v. Anchor Enters., Inc.*, 245 N.C. 131, 135, 95 S.E.2d 577, 581 (1956). Any pending motions as to a prior complaint are rendered moot once the trial court grants a plaintiff's motion to amend. *See Burrell*, 244 N.C. at 665, 94 S.E.2d at 832.; *see also Woodcock v. Cumberland Cnty. Hosp. Sys.*, 384 N.C. 171, 174, 884 S.E.2d 633, 636 (2023) (acknowledging the lower court "granted [the plaintiff's] motion [to amend] . . . , deemed the Second Amended Complaint filed as of that date, and denied the pending Motion to Dismiss as Moot").

This Court addressed an issue similar to this case in *Woody v. Vickrey*, 276 N.C. App. 427, 857 S.E.2d 734 (2021). In *Woody*, the defendants filed a motion for summary judgment, which was denied by the superior court judge. *Id.* at 427, 431, 857 S.E.2d at 738. The plaintiff then obtained "leave of the [c]ourt and [] filed an

amended and restated complaint six days prior" to the entry of the order denying summary judgment. *Id.* at 440, 857 S.E.2d at 743. Thereafter, a second superior court judge addressed and ruled upon a motion for summary judgment the defendants filed against the plaintiff's amended complaint. *Id.*

This Court addressed the issue of whether the second judge had jurisdiction to hear and rule on the second motion for summary judgment. *Id.* at 440, 857 S.E.2d at 743. This Court held the second judge had jurisdiction to address the second motion for summary judgment because the plaintiff filed an amended complaint prior to the first judge's entry of its order. *Id.* We reasoned that the first judge no longer had jurisdiction to address the defendants' motion for summary judgment against the original complaint once the plaintiff filed its amended complaint because "the filing of the amended . . . complaint rendered any arguments regarding the original complaint moot[.]" *Id.* at 440, 857 S.E.2d at 743–44 (citation omitted).

The precise procedural posture of *Woody* differs from the present case, but its application of our Court's precedent is applicable here. In *Woody*, the plaintiff obtained leave to amend and filed his amended complaint prior to the first superior court judge's ruling on the defendants' motion for summary judgment against the original complaint; the summary judgment ruling was rendered moot. *Id.* Here, Plaintiff obtained oral approval from Judge Croom to file an amended complaint, and then filed the Second Amended Complaint before obtaining formal, written leave to do so. The court then entered the Croom Order, the terms of which both granted

Plaintiff leave to amend and denied Defendants' motion for summary judgment against Plaintiff's prior complaint. Even though the court had access to the Second Amended Complaint before entering the Croom Order, the Croom Order responded solely to the motion for summary judgment against Plaintiff's prior complaint, and simultaneously granted Plaintiff leave to file the Second Amended Complaint. The procedural timelines may differ between *Woody* and this case, but the material facts are the same: Plaintiff's filing of an amended complaint mooted any decisions by the court regarding his prior complaints.

The Croom Order's grant of leave to amend Plaintiff's complaint, and the filing of the Second Amended Complaint, rendered any decisions regarding the prior complaint moot—including the concurrent ruling against Defendants' motion for summary judgment in the Croom Order. Therefore, Judge Browne had jurisdiction to hear and to rule upon any motions regarding Plaintiff's Second Amended Complaint notwithstanding any earlier decisions on superseded prior complaints.

## B. Proper Ruling on the Merits

Plaintiffs next contend "even if one considers the merits of [the Browne Order], . . . the Order still is erroneous when it dismissed the [Second Amended Complaint] as an insufficient pleading."

Though the procedural history in this case includes multiple pre-trial motions under Rules 12(b)(6), 12(c), and 56 of the North Carolina Rules of Civil Procedure, the current posture of this matter is Plaintiffs' appeal from the Browne Order, which

granted Defendants' Second 12(b)(6) Motion. Plaintiffs contend it was improper for the trial court to consider a document other than Plaintiffs' Second Amended Complaint—the general warranty deed for the sale of the Airfield—when making its ruling. We disagree.

Ordinarily, a court's determination on a Rule 12(b)(6) motion to dismiss is limited to the contents of the complaint alleged to be insufficient, and if "a trial court considers matters outside the pleading, then it must convert the motion to a motion for summary judgment." *Blue v. Bhiro*, 381 N.C. 1, 2, 871 S.E.2d 691, 692 (2022). However, "matters outside the pleading" do not include "a document that is the subject of a plaintiff's action that he or she specifically refers to in the complaint[,]" as these "may be attached as an exhibit by the defendant and properly considered by the trial court without converting a Rule 12(b)(6) motion into one of summary judgment." *Holton v. Holton*, 258 N.C. App. 408, 419, 813 S.E.2d 649, 657 (2018). Whether a conversion is required is a question of law and reviewed de novo. *Blue*, 381 N.C. at 5, 871 S.E.2d at 694.

Here, Plaintiffs' Second Amended Complaint referred to the general warranty deed as the only writing supporting their claim for breach of contract. Specifically, the Second Amended Complaint alleged the language within the deed "[met] all the requirements of a valid contract to convey real property thus entitling [Plaintiff] to specific performance of the contract." Defendants attached a copy of the general warranty deed to their First 12(b)(6) Motion, in response to Plaintiffs' superseded

prior complaint. The record does not show that the general warranty deed was again submitted by either party for consideration alongside Plaintiffs' Second Amended Complaint. Nonetheless, the deed was lengthily discussed by the court and the parties throughout the subsequent proceedings. In the event the general warranty deed was meaningfully considered by the court in reaching the Browne Order's ruling, it was proper for the court to consider the sole document Plaintiffs held out as the subject of its claim in determining the sufficiency of Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6). We now turn to the merits of the trial court's Rule 12(b)(6) ruling in the Browne Order.

This Court reviews a trial court's decision to grant a Rule 12(b)(6) motion to dismiss de novo. *Taylor v. Bank of Am., N.A*, 382 N.C. 677, 678, 878 S.E.2d 798, 800 (2022). A motion under Rule 12(b)(6) of the North Carolina General Statutes is properly granted "(1) when the complaint on its face reveals that no law supports [the] plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats [the] plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). "Factual inferences should be viewed 'in the light most favorable to the nonmoving party.'" *Cato Corp. v. Zurich Am. Ins. Co.*, 386 N.C. 667, 672, 909 S.E.2d 144, 148 (2024) (citation omitted).

For a breach of contract claim to survive a Rule 12(b)(6) motion for failure to state a claim, a plaintiff must allege (1) the existence of a valid contract and (2) a

breach of the contract's terms. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). North Carolina law provides that a valid contract for the sale of land must be in writing to satisfy the statute of frauds. N.C. Gen. Stat. § 22-2 (2023).

Plaintiffs argue the statute of frauds does not apply to the real estate transaction in this case because the general warranty deed was an executed, consummated contract, as opposed to an executory, pending contract. Plaintiffs cite our Supreme Court's decision in *Dobias v. White*, 240 N.C. 680, 83 S.E.2d 785 (1954), in support of this principle. In *Dobias*, the plaintiff and the defendants were both represented by the same attorney. *Id.* at 685, 83 S.E.2d at 788. Through their mutual attorney, the plaintiff and the defendants negotiated a deal whereby the plaintiff would accept a deed of property from the defendants as full satisfaction for a mortgage debt owed on that property to the plaintiff by the defendants. *Id.* at 685, 83 S.E.2d at 789. The mutual attorney prepared the deed, the defendants signed the deed, and the deed was deposited with the attorney for the plaintiff to sign. *Id.* The plaintiff later backed out of the negotiated terms, and the defendants sued to enforce the agreement. *Id.*

A significant question before the Court in *Dobias* was whether, at the time the deed was deposited with the attorney, the contract for satisfaction of the defendants' debt should "be classified as an executed or as an executory agreement." *Id.* at 680, 686, 83 S.E.2d at 789. Recognizing that the contract at issue concerned the transfer

of real property, the Court explained the statute of frauds does not apply to executed contracts, but may bar enforcement of noncompliant executory contracts:

> The Statute of Frauds . . . has no application to a fully executed or consummated contract. . . .
>
> It may be invoked only to prevent the enforcement of executory contracts. . . .
>
> There can be no breach of an executed contract. . . .
>
> [I]f the deed was merely deposited with [an attorney] for delivery to and acceptance by [a] plaintiff, the contract is still executory in nature, and [the] plaintiffs' plea of the Statute of Frauds constitutes a valid and complete defense against its enforcement.

*Id.* at 687, 83 S.E.2d at 790 (citations omitted). The Court ultimately remanded to the trial court for rehearing because the court's findings of fact—each supported by distinct, competent evidence—supported disparate conclusions on this issue. *Id.* at 689, 83 S.E.2d at 792.

Plaintiffs correctly posit that *Dobias* is applicable to this case; however, Plaintiffs misconstrue *Dobias*'s application to the current factual circumstances. Unlike *Dobias*, the factual evidence pleaded in Plaintiffs' Second Amended Complaint can support only one conclusion: that any contract for the sale of the Airfield between Plaintiffs and Defendants was executory. Defendants signed the general warranty deed and then delivered it to Adams for Plaintiffs to sign, but retained—and, in fact, invoked—the right to withdraw the deed if the parties could not reach an agreement on the terms of the contract. Though the Second Amended Complaint alleged

"Defendants delivered the deed to [Plaintiffs]," the facts alleged in the Complaint reveal the deed was delivered to Plaintiffs' attorney, but never to Plaintiffs. To the extent Plaintiffs' argument contends delivery of the general warranty deed to Adams in preparation for Plaintiffs' signing amounted to full execution of the contract, Plaintiffs cite no law in direct support and our research is likewise bereft. *See Lerner Shops of N.C. v. Rosenthal*, 225 N.C. 316, 320, 34 S.E.2d 206, 209 (1945) ("A delivery upon condition that the instrument should never become effective according to its terms is, in principle, as much a conditional delivery as one made upon condition that the deed should become effective only upon the happening of a specific event."). Therefore, the contract alleged in Plaintiffs' Second Amended Complaint was an executory contract for the sale of land to which the statute of frauds applies.

To satisfy the statute of frauds, "[t]he contract must be in writing and signed by the party to be charged." *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 123, 388 S.E.2d 538, 551 (1990). "Although the writing must contain all essential elements of a contract to convey land, memoranda of land sales may be informal, and all provisions of the contract need not be in a single instrument." *Id.* (citations omitted). "The essential elements of a contract for conveyance of land are the names of the grantor and grantee, the price or consideration, and a description of the property to be sold." *Id.* (citing *Hurdle v. White*, 34 N.C. App. 644, 648, 239 S.E.2d 589, 592 (1977)).

Plaintiffs' Second Amended Complaint pleaded the existence of the general warranty deed as the sole written document evidencing the contract for the sale of the Airfield. However, the Complaint concedes, and the parties agree, that the general warranty deed does not exist because Defendants invoked their right to have the deed returned to them when the parties could not agree on material terms and Thompson destroyed the deed. Even assuming the court considered the alleged terms of the general warranty deed in reaching its conclusion, the record shows that, at the time Plaintiffs filed their Second Amended Complaint, no document existed which included Defendants' names, as the grantor and grantee; Defendants' signatures, as the party charged; a complete description of all property sold, as the parties had not determined whether the additional hangar would be included in the transaction; and the price or consideration of the sale, as those terms were still being negotiated when Defendants signed the deed. The general warranty deed could not satisfy the statute of frauds.

The Second Amended Complaint requested specific performance for breach of a real estate contract but failed to plead the existence of a written document satisfying the statute of frauds. **{R. pp. 1237-42}.** Therefore, the Second Amended Complaint reveals the absence of an existing valid contract, a fact necessary to its claim. The trial court did not err by dismissing Plaintiffs' claim for breach of contract pursuant to Rule 12(b)(6).

**C. Rule 37 Sanctions**

Lastly, Plaintiffs contend the trial court abused its discretion in awarding Defendants the expenses incurred in obtaining the Discovery Order as a sanction under Rule 37 of the North Carolina Rules of Civil Procedure. "A trial court's choice of sanctions under Rule 37 will not be reversed on appeal absent an abuse of discretion." *Leder v. Leder*, 166 N.C. App. 498, 501, 601 S.E.2d 882, 885 (2004) (citing *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239 (1992)). An "[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted). When the record contains "plenary evidence therein to support the trial court's thorough findings," this Court will find no abuse of discretion on appeal. *Hursey v. Homes by Design, Inc.*, 121 N.C. App. 175, 179, 464 S.E.2d 504, 506 (1995) (citation modified).

Rule 37 permits a party to move to compel the nonmoving party to respond to discovery where the nonmoving party has been dilatory, evasive, or noncompliant with discovery requests. N.C. R. Civ. P. 37(a) (2023). Rule 37 then instructs the trial court *shall* award expenses reasonably incurred in obtaining its ruling to the prevailing party:

> If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other

circumstances make an award of expenses unjust.

N.C. R. Civ. P. 37(a)(4). Because Rule 37 "requires the award of expenses to be reasonable, the record must contain findings of fact to support the award of any expenses, including attorney's fees." *Benfield v. Benfield*, 89 N.C. App. 415, 422, 366 S.E.2d 500, 504 (1988) (citation modified).

Plaintiffs argue they "did not engage in dilatory tactics" and the trial court abused its discretion "in awarding sanctions of $10,047.50 for [their] failure to respond to one interrogatory." Though Plaintiffs initially frame their argument as a challenge to the trial court's award of expenses incurred, they never address the sufficiency of Defendants' evidence supporting the amount of expenses awarded. Rather, the substance of their argument requests this Court reweigh the sufficiency of the evidence supporting the trial court's decision to grant Defendants' motion to compel discovery.

The Discovery Order includes findings of fact that Defendants' discovery requests were not unreasonable, and that Plaintiffs failed to answer or fully answer four of Defendants' interrogatory requests. These findings are supported by record evidence that Plaintiffs did not answer the requests, but instead repeatedly instructed Defendants to look at other record evidence, which would contain an answer. The Discovery Order then concludes that Plaintiffs should be compelled to properly answer Defendants' interrogatories, and that the court must award Defendants expenses incurred pursuant to Rule 37.

We hold the trial court did not abuse its discretion in awarding expenses to Defendants under Rule 37 because it properly concluded that Plaintiffs should be compelled to answer discovery and was therefore required to award Defendants their expenses reasonably incurred.

### III. Conclusion

For the foregoing reasons, we affirm the Browne Order and the Discovery Order.

AFFIRMED.

Judges ZACHARY and FLOOD concur.

Report per Rule 30(e).